UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

Debtor

Case No. _____
    Amended

**NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING**

[Do not use to sell personally identifiable information about individuals]

**Notice**

NOTICE IS GIVEN that _____ (movant), the _____ [*enter movant's role in the case (for example, debtor or trustee)*], intends to sell the property described below and moves for authority to sell the property free and clear of liens under 11 U.S.C. § 363(f). Movant's address and phone number are:

The holders of liens of which the movant requests the property be sold free and clear are [*list lienholders*]:

If you wish to object to any aspect of the sale or fees disclosed in paragraph 7 or 15, you must--

1. Attend the hearing set in paragraph 3 below; and

2. Within 21 days after the service date in paragraph 17 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401:

**760.5 (3/5/206)**              Page 1 of 6

a.  a written objection stating the specific facts upon which the objection is based, and

b.  a certificate of service of the objection on the movant.

3.  A hearing on the motion and any objections to the sale or fees, which

   is [*check this box only if directed to do so by the court*]

   is not

an evidentiary hearing at which witnesses may testify, is scheduled as follows:

**Date:** _____        **Time:** _____

**Location**:    Courtroom #_____, _____

   Telephone Hearing [*See Local Bankruptcy Form (LBF) 888, Telephone Hearing Requirements.*]

   **Call In Number:** (855) 244-8681

   **Access Code:**    2319 199 8338 for Judge David W. Hercher (dwh)

   2311 562 9438 for Judge Peter C. McKittrick (pcm)

   2303 266 1826 for Judge Teresa H. Pearson (thp)

   2318 130 5070 for Judge Kathryn F. Evans (kfe)

   Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

If no timely objection is filed, an order may be lodged and the hearing may be canceled. Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov after the objection deadline has passed.

**Motion**

The movant moves for authority to sell the property free and clear of liens under § 363(f) as follows--

1.  The specific subsections of § 363(f) movant relies on for authority to sell the property free and clear of liens are [*specify for each lienholder*]:

2.  Buyer's name and relation or other connection to debtor:

3.  General description of the property [*if real property, state street address here and attach legal description as an exhibit to the notice filed with the court*]:

4.  A copy of the full property description or inventory may be examined or obtained at:

5.  The property may be previewed at [*include time and place*]:

6.  Other parties to the transaction and their relationship to the debtor are:

7.  The gross sale price is: $ _____.

    All liens on the property total $ _____, of which movant believes a total of $ _____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable).

    Secured creditor also seeks reimbursement of $ _____ for fees and costs.
    Total sales costs will be: $ _____.

    All tax consequences have been considered, and it presently appears that the sale will result in net proceeds to the estate after payment of valid liens, fees, costs, and taxes of approximately: $ _____.

**760.5 (3/5/206)**

8.  The sale    is    is not [*check one*] of substantially all of the debtor's assets. Terms and conditions of sale:

9.  Competing bids must be submitted to the movant no later than _____ and must exceed the above offer by at least _____ and be on the same or more favorable terms to the estate.

10. Summary of all available information regarding valuation, including any independent appraisals:

11. If paragraph 7 indicates little or no equity for the estate, the reason for the sale is:

    and expenses and taxes resulting from the sale will be paid as follows:

12. (Chapter 11 cases only) The reason for proposing the sale before confirmation of a plan of reorganization is:

**760.5 (3/5/206)**                    Page 4 of 6

13. The following information relates to liens on the property which are listed in priority order:

| Name | Service Address [*See Federal Rule of Bankruptcy Procedure (FRBP) 7004*] | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid.) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Of the liens listed in this paragraph designated to be fully paid, movant does not request that the sale be free and clear but moves for authority to pay them in full.

14. Any liens not fully paid at closing will attach to the sale proceeds in the priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs, or other charges as provided in this motion, must be held in trust until the court orders payment.

15. (If real property) The court appointed real estate broker, _____ _____will be paid _____.

16. If this is a chapter 11 case, this motion complies with the guidelines set forth in LBF 363, *Procedures re: Motions for Sale of All or Substantially All Assets.*

17. I certify that on _____ this document was served--

[_] [*check this box if movant is chapter 7 trustee*] under FRBP 7004 on debtor, U.S. trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys.

[_] [*check this box if movant is not chapter 7 trustee*] under FRBP 7004 on debtor, trustee (if any), U.S. trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys, and that it was also sent on that date, pursuant to FRBP 2002(a), to all creditors and all parties as listed in the court's records that were  obtained on _____, a copy of which is attached to the document filed with the court.

18. For further information, contact:


_____   _____
Date           Signature & Relation to Movant

               _____
               (If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#

               _____

**760.5 (3/5/206)**            Page 6 of 6

## <u>EXHIBIT A</u>

Legal Description

**2118 Winchester Avenue, Reedsport, OR 97467**

Lots 1 and 2, Block 25, REEDSPORT ADDITION to the City of Reedsport, Douglas County, Oregon.

EXCEPTING THEREFROM that portion conveyed to the State of Oregon by deed recorded on December 5, 2022 as Recording No. 2022-018007, Douglas County, Oregon.

**2150 Winchester Avenue, Reedsport, OR 97467**

Lots 3 and 4, Block 25, REEDSPORT ADDITION to the City of Reedsport, Douglas County, Oregon.

**Estate of Reinard Adolph Pollmann**
**USBC Case No. 25-60008-thp7**
**Sale Proceeds Waterfall Statement**

**2118 & 2150 Winchester Avenue, Reedsport, OR 97467**

| | |
|---|---:|
| **Purchase Price** | **$450,000.00** |
| | |
| Less: Broker's and Property Manager's Commissions | |
| Trustee's Master Broker: West Coast Commercial Realty (2% of purchase price, plus 25% of Local Broker's commission)[1] | $12,937.50 |
| Trustee's Broker Joseph Aquirre/Pacific Coast Real Estate & Development (3.5% of purchase price, less 25% of such amount to be paid to Master Broker) | $11,812.50 |
| Buyer's Broker Matthews Real Estate Investments Services, LLC (2.5% of purchase price) | $11,250.00 |
| Total Commissions | $36,000.00 |
| Less: Real Estate Taxes | $44,213.54 |
| Less: Closing Costs (1% of purchase price) | $4,500.00 |
| **Total sales costs** | **$84,713.54** |
| | |
| **Net Proceeds** | **$365,286.46** |
| | |
| *Senior Liens Fully Paid* | |
| Oregon Department of Revenue L1355241152[2] | $28,163.29 |
| Oregon Department of Revenue L1576453920[2] | $27,007.43 |
| Oregon Department of Revenue L2109915072[2] | $19,931.03 |
| Douglas County Tax Warrant 25171[2] | $920.57 |
| Douglas County Tax Warrant 25158[2] | $676.97 |
| Douglas County Judgment 22CV34798[2] | $2,159.52 |
| **Total** | **$78,858.81** |
| **Net Proceeds Before IRS Payment** | **$286,427.65** |
| IRS (Lien No. 4775952223)[3] | $5,477,057.20 |
| *Partial Payment to IRS\** | $143,213.83 |
| *IRS Carve-Out for Benefit of Estate (50%)* | $143,213.83 |

| | |
|---|---:|
| *Liens Not Paid* | |
| Internal Revenue Service Deficiency (Lien No. 4775952223) | $5,333,843.38 |
| Internal Revenue Service (Lien No. 477973423) | $140,077.72 |
| Oregon Department of Consumer and Business Services R220153/2024-003211 | $392,784.77 |
| Douglas County Tax Warrant 230240 | $672.50 |
| Douglas County Tax Warrant 230763 | $722.14 |
| Western Mercantile Agency, Inc. 24SC26915 | $8,420.79 |

| | |
|---|---:|
| Total Liens on Property | $6,142,807.47 |
| Total Liens Paid | $266,286.18 |
| **Total Liens Unpaid** | **$5,876,521.30** |

[1] Master Broker commission and employment subject to Court approval. Hearing scheduled for April 7, 2026 at 11:00 a.m.  See ECF No. 337.

[2] Lien may be paid from sale closing of another property to which lien attaches prior to this sale.

[3] IRS lien amount may be reduced from sale closings of other properties to which lien attaches prior to this sale.

**Estate of Reinard Adolph Pollmann**
**USBC Case No. 25-60008-thp7**

**2118 & 2150 Winchester Ave., Reedsport, OR 97467**
**SUPPLEMENTAL INFORMATION**

| Name | Service Address | Approximate Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid) | 363(f) provision |
|---|---|---|---|---|
| Douglas County Real Property Tax | Douglas County Assessor 1036 SE Douglas Avenue Courthouse Room CH206 Roseburg, OR 97470 | $44,213.54 | fully paid | 363(f)(5) |
| Oregon Department of Revenue | Oregon Department of Revenue John Butler Bankruptcy Technician Oregon Department of Revenue 955 Center St NE Salem, OR 97301-2555 | $75,101.75 | fully paid | 363(f)(5) |
| Douglas County | Tracy Perry Chief Deputy Tax Collector PO Box 850 Roseburg, OR 97470 | $5,151.70 | partially paid | 363(f)(5) and (f)(2) |
| Department Treasury - Internal Revenue Service | Internal Revenue Service PO Box 7346 Philadelphia, PA 19101-7346 Cristal Jatip Bankruptcy Specialist Internal Revenue Service M/S 0240 1220 SW Third Ave., Suite G-044 Portland, OR 97204-2871 | $5,473,921.10 | partially paid | 363(f)(2) |
| Western Mercantile Agency, Inc. | Michelle K. Gallino, President Western Mercantile Agency, Inc. 165 S 5th Street, Ste A Coos Bay, OR 97420 | $8,420.79 | not paid | 363(f)(4). Judgment entered within 90 days of petition date and is avoidable by the Trustee as a preference under 11 U.S.C. 547 |

| Oregon Department of Consumer and Business Services | Sean O'Day, acting director<br>Oregon Department of Consumer and Business Services<br>350 Winter St NE<br>PO Box 14480<br>Salem, OR 97309-0406 | $392,784.77 | not paid | 363(f)(2) |
|---|---|---|---|---|
| Supplementary notice to: | Gillian Bunker and Ilana Quesnell<br>U.S. Department of Justice<br>1000 SW Third Avenue, Suite 600<br>Portland, OR 97204 | | | |
| Supplementary notice to: | Carla McClurg<br>Oregon Department of Justice<br>1162 Court St. NE<br>Salem, OR 97301 | | | |

DigiSign Verified - 942c84d7092a9f7c9f976d9be4915d5dff4

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (the "Agreement") is made as of this 2ND day of February, 2026 (the "**Effective Date**"), by and between **Kenneth S. Eiler, as Trustee of the Estate of Pollmann, debtor** ("Seller"), and **EVERGREEN ENERGY GROUP LLC**, a Delaware limited liability company ("**Buyer**").

Seller is a trustee appointed by the US Bankruptcy Court for the District of Oregon (the "**Bankruptcy Court**"), In re Reinard Adolph Pollman, Case No. 25-600089-tmr11 (the "**Bankruptcy Action**").

In consideration of the mutual covenants, agreements and promises of the parties contained herein, the adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1. **Property**. Seller hereby agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, subject to the terms and conditions herein, the fee simple title to the real property known as 2118 and 2150 Winchester Avenue, Reedsport, Oregon 97467, which is described on **Exhibit "A"** attached hereto, together with all privileges, rights, covenants, easements, hereditaments and appurtenances belonging thereunto; all right, title and interest of Seller in and to any streets, alleys, ramps, passages, abutter's rights and other rights-of way included therein or adjacent thereto, if any; and all right, title and interest of Seller in and to all development rights related thereto (collectively, the "**Property**").

2. **Purchase Price**. The purchase price to be paid by Buyer to Seller for the purchase of the Property shall be Four Hundred Fifty Thousand and 00/100 Dollars ($450,000) (the "**Purchase Price**"). The Purchase Price shall be paid as follows:

(a) **Deposit**. Within five (5) business days after the Effective Date, Buyer shall deposit the sum of Twenty-Five Thousand Dollars ($25,000) (the "**Deposit**") in immediately available federal funds with and to be held by Ticor Title, Candice Weischedel ("**Escrow Agent**"), which, except as otherwise provided herein or in the event of Seller's default, shall be non-refundable to Buyer upon its delivery by Buyer and shall be applicable to the Purchase Price.

(b) **Cash at Closing**. On or before Closing (as defined below), Buyer shall deposit with Escrow Agent the remainder of the Purchase Price (i.e. less the Deposit), and any other sums required herein in immediately available federal funds.

(c) **Return of Deposit**. If under the terms of this Agreement, either Buyer or Seller is entitled to receive the Deposit, the other party agrees to take such actions and execute and deliver such instruments, instructions or documents, which may be reasonably necessary to assure that Escrow Agent promptly pays or refunds the Deposit to the appropriate party.

3. **Closing**. Closing for the purchase of the Property (the "**Closing**") shall occur on or before the fifteenth (15th) day after the end of the Due Diligence Period (the "**Closing Date**").

4. **Title and Survey.**

(a) **Title Policy**. Title shall be evidenced by Escrow Agents, the partner

4932-4726-9775, v. 2

("**Title Company**") issuing its American Land Title Association (ALTA) 2024 Standard Owner's Policy of Title Insurance to Buyer in an amount equal to the Purchase Price, showing title to the Property vested in Buyer ("**Title Policy**"), subject only to the permitted Encumbrances (as defined below). Buyer shall pay the expense of issuing the Title Policy, and any endorsements thereto and any survey costs.

(b)     **Permitted Encumbrances**. On within three (3) days following the Effective Date, Seller shall order at Seller's expense a Preliminary Report from Title Company (the "**Preliminary Report**"). Seller shall promptly furnish Buyer within the Preliminary Report. Buyer shall have until the end of the Due Diligence Period to provide Seller, in writing, a list of any objections to the exceptions disclosed on the Preliminary Report. All other title exceptions shown on the Preliminary Report and not identified as unacceptable by Buyer shall be included as "**Permitted Encumbrances**". Seller shall have five (5) days following receipt of Buyer's written objections to the Preliminary Report to notify Buyer of Seller's agreement to cure Buyer's objections to the Preliminary Report. If Seller does not agree to cure of all of Buyer's objections, then this Agreement shall terminate and the Deposit shall be returned to Buyer unless Buyer provides written notice to Seller within five (5) days of Buyer's receipt of the Preliminary Report that Buyer accepts such title to the Property as Seller has agreed to provide. Failure by Seller to notify Buyer within such five (5) day period of Seller's agreement to deliver title with Seller's objections cured shall constitute Seller's election not to cure Buyer's objections. If Buyer provides Seller written notice that Buyer accepts such title as Seller is willing to provide prior to the date that the Agreement is terminated, any of Buyer's title objections that Seller did not expressly agree to cure shall be waived by Buyer and such title objections shall be considered Permitted Encumbrances. Notwithstanding anything to the contrary contained in this Agreement, Seller hereby agrees, at its sole expense, to pay or cause the removal from title on or before the Closing of all monetary liens (other than non-delinquent real property taxes and assessments), mortgages, mechanic's liens and the like encumbering the Property.

5.     **Seller's Representations and Warranties**. Seller represents and warrants to Buyer as follows, as of the Effective Date and as of Closing:

(a)     Seller has full power an authority to own the Property and to carry on its business as now being conducted.

(b)     Seller has all requisite authority to enter into, execute and deliver this Agreement and the documents to be executed at Closing or otherwise in accordance with the terms of this Agreement, and this Agreement is valid and binding on Seller and is enforceable in accordance with its terms. The execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby do not and will not: (a) violate, result in a breach of, constitute a default or cause any obligation, penalty, premium or right of termination, cancellation, modification or acceleration of any obligation to arise or accrue, or (b) require the consent of any third party other than the Bankruptcy Court.

(c)     Other than the Bankruptcy Action there are no ongoing litigations or condemnation proceedings affecting the Property.

(d)     Seller has not granted any option or other commitment to sell or lease all or any part of the Property to anyone other than Buyer.

4932-4726-9775, v. 2

DigiSign Verified - 942c0...

(e)     Seller has not received notice of any violations of any law, ordinance or regulation, including those related to the environmental condition of the Property and the underground storage tank system ("UST"), and all fees related to the UST are paid as of the Effective Date.

(f)     Seller is not, nor prior to Closing or the earlier termination of this Agreement, will they become, a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated Blocked Persons List) or under any U.S. statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit or Support Terrorism) or other governmental action and is not and prior to Closing or the earlier termination of this Agreement will not engage in any dealings or transactions with or be otherwise associated with such persons or entities.

The accuracy as of the Closing of the representations and warranties set forth in this Section 5 shall be a condition precedent to Buyer's obligations with respect to the Closing.

All representations and warranties of Seller set forth in this Section or elsewhere in this Agreement shall be true and correct as of the mutual execution and delivery of this Agreement and as of the Closing Date (which representations and warranties shall be deemed to have been re-made at Closing), and shall survive the Closing.

6.     **Buyer's Representations and Warranties**. Buyer represents and warrants to Seller as follows, as of the Effective Date and as of Closing:

(a)     Buyer has all requisite authority to enter into, execute and deliver this Agreement and the documents to be executed at Closing or otherwise in accordance with the terms of this Agreement, and this Agreement is valid and binding on Buyer and is enforceable in accordance with its terms. The execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby do not and will not: (a) violate or conflict with any provision of the organizational documents of Buyer, (b) violate or conflict with any law applicable to Buyer, (c) violate, result in a breach of, constitute a default or cause any obligation, penalty, premium or right of termination, cancellation, modification or acceleration of any obligation to arise or accrue, or (d) require the consent of any third party.

(b)     Neither Buyer nor any of its affiliates, nor any of their respective members, and none of their respective officers or directors is, nor prior to Closing or the earlier termination of this Agreement, will they become, a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of OFAC of the Department of the Treasury (including those named on OFAC's Specially Designated Blocked Persons List) or under any U.S statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit or Support Terrorism) or other governmental action and is not and prior to Closing or the earlier termination of this Agreement will not engage in any dealings or transactions with or be otherwise associated with such persons or entities.

The accuracy as of the Closing of the representations and warranties set forth in this Section 6 shall be a condition precedent to Seller's obligations with respect to the Closing. All representations

4932-4726-9775, v. 2

and warranties of Buyer set forth in this Section or elsewhere in this Agreement shall be true and correct as of the mutual execution and delivery of this Agreement and as of the Closing Date (which representations and warranties shall be deemed to have been re-made at Closing), and shall survive the Closing.

7. **Due Diligence**

(a)     Buyer shall have ninety (90) days from the Effective Date to perform all inspections and investigations Buyer deems necessary (the "**Due Diligence Period**"). All costs and expenses of Buyer's due diligence, including without limitation environmental investigations, shall be borne solely by Buyer regardless of whether this transaction closes.

(i)     Until the end of the Due Diligence Period, Buyer will have the right to perform such tests, inspections, and feasibility studies on the Property as Buyer may deem necessary, including those that would require soils analysis, groundwater testing, or other studies commonly associated with a Phase II environmental site assessment and/or a geotechnical investigation. Seller will permit and, to the extent reasonably required by Buyer, will assist Buyer in providing access to Seller's architects, engineers, contractors, subcontractors, managers, analysts, and appraisers in connection with Buyer's review of the Property.

(ii)     Buyer shall indemnify and hold Seller harmless from and against any losses, damages, demands, claims, suits, and other liabilities, including reasonable attorney fees and other expenses of litigation, that result directly from Buyer's presence on or use of the Property for due diligence, except to the extent arising out of the negligence or willful misconduct of Seller or Seller's agents, representatives, or employees. Buyer shall return the Property to substantially the same condition as before such due diligence, ordinary wear and tear excepted.

(iii)     To the extent available, within five (5) days of the Effective Date, Seller will deliver to Buyer information in Seller's possession relating to the Property, including the following (collectively, "**Seller's Due Diligence Materials**"):

a.     A copy of any surveys of the Property.

b.     A copy of any previous environmental reports for the Property and all filings and reports related to the underground storage tanks.

c.     Copies of the real estate tax bills for the previous tax year.

d.     Copies of any agreement affecting the property, including any leases.

e.     If Seller obtains new or updated information regarding the Property prior to Closing, including, but not limited to, restrictions on development of the Property, Seller will immediately notify Buyer of such fact and will promptly deliver all such supplemental information to Buyer.

8.     **Conditions Precedent to Closing for the Benefit of Buyer.**

4932-4726-9775, v. 2

(a)    Buyer's approval of the results of its due diligence as described in Section 7, above.

(b)    On the Closing Date, Seller shall not be in default in the performance of any material covenant or agreement to be performed by Seller under this Agreement.

(c)    On the Closing Date, all representations and warranties made by Seller in Section 5 hereof shall be true and correct in all material respects as if made on and as of the Closing Date.

If any of the foregoing conditions are not satisfied, Buyer may elect to terminate this Agreement, in which event the Deposit shall be refunded to Buyer.

9.    **Closing Procedure**. On or before the date of Closing, the parties shall deposit with Escrow Agent, the following funds and documents:

(a)    **Seller's Deposits**:

(i)    **Deed**. A trustee's deed (subject only to the Permitted Exceptions) (the "**Deed**") with respect to the Property in recordable form, duly executed by Seller and acknowledged and in form typically used by Escrow Agent in the County.

(ii)    **FIRPTA Affidavit**. Seller's Affidavit stating, under penalty of perjury, Seller's U.S. taxpayer identification number and that Seller is not a foreign person within the meaning of 26 U.S.C. Section 1445 to assure Buyer that the withholding of taxes by Buyer is not required by Section 1445.

(iii)    **Oregon Affidavit**. A State of Oregon affidavit confirming that Seller is not a non-resident individual or corporation in the form required by Escrow Agent;

(iv)    **Evidence of Authority**. A certificate of authority executed on behalf of Seller authorizing the sale of the Property to Buyer, together with such other evidence of the authority of the person or persons executing the documents contemplated by this Agreement on behalf of Seller as the Title Company might reasonably request.

(v)    **Additional Documents.** Such other documents, instruments, certifications and confirmations as may reasonably be required by Buyer to fully effect and consummate the transactions contemplated hereby.

(b)    **Buyer's Deposits**:

(i)    **Money**. Funds for the balance of the Purchase Price, together with any additional cash necessary to pay Buyer's share of closing costs and prorations as set forth herein, or such lesser amount as may be required due to credits given to Buyer for the items prorated and/or adjusted per the terms of this Agreement.

4932-4726-9775, v. 2

(ii)    **Additional Documents.** Such other documents, instruments, certifications and confirmations as may reasonably be required by Seller to fully effect and consummate the transactions contemplated hereby.

10.    **Prorations and Adjustments.**

(a)    **Closing Prorations.** The following items are to be finally prorated or adjusted as of 12:01 AM local time on the day of the Closing (the "**Proration Time**").

(i)    **Property Taxes.** Real and personal property taxes and assessments for the current tax year levied or assessed against the Property; provided that if Tenant pays such property taxes and assessments directly to the taxing authorities, there shall be no proration of such property taxes or assessments. If the amount of taxes and assessments for the current tax year has not been fixed by the Closing, the proration shall be based upon the taxes paid for the previous year and re-prorated at the time the amount of taxes and assessments for the current tax year has been fixed.

Seller and Buyer hereby agree that if any of the aforesaid prorations and credits cannot be calculated accurately on the Closing Date, then the same shall be calculated as soon as reasonably practicable after the Closing Date, and any party owing any other party a sum of money based on such subsequent prorations or credits shall promptly pay said sum to such other party. This obligation includes, without limitation, the proration of any supplemental real estate tax assessed after the Closing to the extent it relates to any period prior to the Proration Time.

(b)    **Closing Costs.** Seller shall be responsible for payment of the cost of documentary and other transfer taxes, if any. Buyer shall be responsible for any recording costs, any incremental increase in cost of the Title Policy, the cost of any endorsements to the Title Policy, any survey costs, and any recording costs. Buyer shall pay all escrow fees and costs. Buyer and Seller shall each pay all legal and professional fees and fees of other consultants incurred by Buyer and Seller, respectively. Any closing or escrow fees that are not specifically allocated to Buyer or Seller under this Agreement shall be apportioned in the manner customary in the County, as conclusively declared by the Title Company.

(c)    **Survival.** The provisions of this Section 10 shall survive the Closing.

11.    **Risk of Loss or Condemnation.** In the event of material loss or damage to the Property by fire, condemnation or otherwise prior to Closing, Seller shall have no obligation to cure any damage or loss to the Property, and Buyer shall be obligated to close the sale in accordance with this Agreement. In the event of any such damage or condemnation, upon the Closing Buyer shall receive an assignment of all insurance and/or condemnation proceeds, together with a credit from Seller for the amount of any deductible for which Buyer will be obligated to pay after the Closing, in full and complete settlement of any and all claims.

12.    **Default.**

(a)    **Seller Default.** If Seller defaults hereunder and such default is not cured within five (5)) days following written notice from Buyer describing in reasonable detail the default hereunder (although no written notice or cure period is available in the event of Seller's failure to consummate the Closing on the Closing Date), Buyer shall elect either to: (1) terminate this

4932-4726-9775, v. 2

Agreement by giving Seller timely written notice of such election prior to or at Closing and recover the Deposit, (2) enforce specific performance to consummate the sale of the Property under the terms and conditions of this Agreement, or (3) waive said failure or breach and proceed to Closing. Buyer's remedies herein are not exclusive and Buyer is entitled to any other remedy available under Oregon law. Nothing in these sections will limit Buyer's right to seek recovery of reasonable attorneys' fees and costs actually incurred in pursuing Buyer's remedies. The provisions of this Section 12(a) shall survive the termination of this Agreement.

(b) **Buyer Default**. If the closing does not occur due to a default by Buyer and such default is not cured within five (5) days following written notice from Seller describing in a reasonable detail the default hereunder (although no written notice or cure period is available in the event of Buyer's failure to consummate the Closing on the Closing Date), Seller shall retain the amount of the Deposit as liquidated damages in full settlement of any and all claims, and not as a penalty. The parties hereto acknowledge and agree that the injury caused by such default is difficult or impossible accurately to estimate and that the Deposit is a reasonable pre-estimate of the probably loss associated with such injury. Seller specifically waives any right to specific performance of this Agreement or any right to maintain any cause of action for an amount in excess of the Deposit by reason of any default by Buyer hereunder; provided, however, that this provision will not limit Seller's right to indemnification as provided for in this Agreement or to receive reimbursement of reasonable attorneys' fees and costs actually incurred in the recovery of the Deposit.

(c) **Limitation of Liability**. The parties acknowledge and agree that neither the members, shareholders, affiliates, officers, directors, investment managers, employees, partners, agents nor advisors of Seller or Buyer, respectively, assume any personal liability for obligations entered into by or on behalf of such party. Notwithstanding any other provision of this Agreement to the contrary in no event shall Seller or Buyer have any liability to the other for lost profits, speculative, special, consequential or punitive damages. The provisions of this Section 12(c) shall survive the Closing.

13. **Brokers/Commissions**. Buyer has been represented by Matthews Real Estate Investments Services, LLC and Seller has been represented by Pacific Coast Real Estate and West Coast Commercial Realty in this transaction. Seller shall pay all sales and broker commissions due to both Buyer's and Seller's brokers.

13. **Notices**. All notices required hereunder shall be given in writing, delivered and be effective upon receipt (a) by nationally recognized overnight courier service; (b) by personal delivery; (c) by fax with the original sent by certified mail or (d) by electronic mail, to the addresses indicated below, or such other places as the parties may designate in writing to one another:

Buyer:
Evergreen Energy Group LLC
2955 Red Arrow Drive
Las Vegas, Nevada 89135
Attn: Jan Sucha
(P): (415) 328-7209
Email: jsucha@gmail.com and hbode@mac.com

Seller:
**Kenneth S. Eiler, as Trustee of the Estate of Pollmann, debtor**

4932-4726-9775, v. 2

515 SW Saltzman Rd, PMB 810 Portland OR, 97229
Attn: Kenneth S. Eiler
(P): 503-292-6020
Email: Kenneth.Eiler7@gmail.com

Escrow Agent:          Ticor Title
                       111 SW Columbia St, Suite 1000 Portland OR 97201
                       Attn: Candice Weischedel
                       (P): 503-219-2140 O: 503-242-1210
                       Email: Candice.weischedel@ticortitle.com
                       Rosalyn.connolly@ticortitle.com

14.    **Time.** Time is of the essence in this Agreement. In any case where a date for performance by either party shall fall on a Saturday, Sunday or holiday, the time for performance shall automatically extend to the next regular business day.

15.    **General.** This Agreement shall be governed by and construed in accordance with the laws of the State of Oregon. This Agreement constitutes the entire agreement between the parties with respect to this transaction. This Agreement may not be changed or modified except by instrument in writing signed by the parties hereto. The terms, covenants and conditions herein shall bind and inure to the benefit of the successors and assigns of the parties hereto. The title and headings of the sections hereof are solely for means of reference and are not intended to modify, explain or place any construction on any of the provisions of this Agreement.

16.    **Assignment.** Buyer shall not have the right to assign this Agreement or any interest or right hereunder or under the Escrow without the prior written consent of Seller, which consent may be withheld in Seller's sole and absolute discretion; provided, however, that Buyer shall have the right to assign all of its interest (but not part of its interest) in this Agreement to any affiliate of Buyer that is at least majority owned by Buyer and controlled by Buyer or Buyer's owners.

17.    **Authority of Parties.** The person executing this Agreement for Seller and Buyer each represent and warrant that he or she has the authority to execute this Agreement on behalf of such party.

18.    **Enforcement.** If either Buyer or Seller must sue to enforce this Agreement or any document executed and delivered in connection herewith, including in connection with any bankruptcy proceeding, the prevailing party shall be entitled to its court costs and reasonable attorneys' fees incurred in doing so.

19.    **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument, binding on Seller and Buyer, and the signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

20.    **1031 Exchange.** The parties to this Agreement acknowledge that either party may desire to structure the sale or the purchase of the Property as an exchange for like-kind property pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended, in order to defer recognition of income on the disposition of the Property or other properties. The parties agree to

4932-4726-9775, v. 2

reasonably cooperate with each other to accomplish such exchange(s) and each party hereby agrees that any and all costs associated with said exchange shall be borne solely by the exchanging party and shall in no way be attributable to the non-exchanging party. In no event shall the non-exchanging party be required to take title to the exchanged property(ies) to effectuate the tax deferred exchange contemplated by this Section.

22.     **Waiver.** The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

23.     **Partial Invalidity.** If any term, provision, covenant or condition of this Agreement, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all terms, provisions, covenants and conditions of this Agreement, and all applications thereof, not held invalid, void or unenforceable, shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby, provided that the invalidity, voidness or unenforceability of such term, provision, covenant or condition (after giving effect to the next sentence in this Section) does not materially impair the ability of the parties to consummate the transactions contemplated hereby. In lieu of such invalid, void or unenforceable term, provision, covenant or condition, there shall be added to this Agreement a term, provision, covenant or condition that is valid, not void and enforceable and is as similar to such invalid, void or unenforceable term, provision, covenant or condition as may be possible.

24.     **Disclosure Pursuant to ORS 93.040(2).** THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930 (Definitions for ORS 30.930 to 30.947), IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300 (Definitions for ORS 195.300 to 195.336), 195.301 (Legislative findings) AND 195.305 (Compensation for restriction of use of real property due to land use regulation) TO 195.336 (Compensation and Conservation Fund) AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 (Definitions for ORS 92.010 to 92.192) OR 215.010 (Definitions), TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300 (Definitions for ORS 195.300 to 195.336), 195.301 (Legislative findings) AND 195.305 (Compensation for restriction of use of real property due to land use regulation) TO 195.336 (Compensation and Conservation Fund) AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

4932-4726-9775, v. 2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER:**
**Kenneth S. Eiler, as Trustee of the Estate of Pollmann, debtor**

By: _Kenneth Eiler_____   **02/26/2026**
　　　 Kenneth S. Eiler, Trustee


**BUYER:**
**EVERGREEN ENERGY GROUP LLC,** a Delaware limited liability company


By: _____
　　　 Howard Bode
Its: ___Manager_____


The undersigned Escrow Agent hereby acknowledges receipt of a fully signed copy of this Agreement.

Ticor Title


By:_____

Its:_____


4932-4726-9775, v. 2

DigiSign Verified - 942c8b0-002a4/bd20t8e01c8194etbf4c

**Exhibit A**
**Legal Description of Land**

4932-4726-9775, v. 2

**<u>Trustee's Addendum to Commercial Real Estate Sale Agreement</u>**

1.      Seller is Kenneth S. Eiler, Trustee of the Estate of Reinard Adolph Pollmann, debtor.

2.      In the event of a conflict between the Commercial Sale Agreement ("Sale Agreement") and any prior addenda or exhibit, and this Addendum, the terms of this Addendum shall control.  The Commercial Sale Agreement and all addenda including this Addendum shall be referred to as the "Agreement".

3.      Any dispute between the parties shall be within the exclusive jurisdiction of and decided by the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court"), *In re Reinard Adolph Pollmann,* Case No. 25-60008-thp7 (the "Bankruptcy Action").  This provision specifically overrides and supersedes any contrary provisions involving venue, mediation or arbitration contained in the Sale Agreement.

4.      The sale and Seller's obligation to close shall be subject to entry of an order by the Bankruptcy Court approving the sale and this Agreement pursuant to 11 U.S.C. 363 (the "Sale Order") and shall be subject to overbid by third parties following a motion for approval of sale filed by Seller in the Bankruptcy Action.  To the extent an overbid by a competing bidder is received, Seller shall conduct an auction in which Buyer may participate.  This provision overrides and supersedes any contrary deadline for closing set forth the in the Sale Agreement.   Seller shall be obligated to close no later than 14 days after entry of the Sale Order.

5.      Closing/escrow shall be done through Ticor Title (the "Title Company").

6.      Seller has not made, does not make and specifically disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to (a) the nature, quality or condition of the Property, including, without limitation, zoning and the state of construction, construction to be completed, punch list items to be completed, repair or lack of repair or deferred maintenance, (b) the suitability of the Property for any and all activities and uses which Buyer may conduct thereon, (c) the compliance of or by the Property or its operation with any laws, rules, ordinances or regulations of any applicable governmental authority or body, including, without limitation, the Americans with Disabilities Act and any rules and regulations promulgated thereunder or in connection therewith, (d) the habitability or fitness for a particular purpose of the Property, and (e) the status of any agreement affecting the Property, and (f) any other matter with respect to the Property, and specifically that, Seller has not made, does not make and specifically disclaims any representations or warranties regarding solid waste, as defined by the U.S. Environmental Protection Agency regulations at 40 C.F.R., Part 261, or the disposal or existence, in or on the Property, of any hazardous substance, as defined by the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, and other applicable state laws, and regulations promulgated thereunder.   Buyer further acknowledges and agrees having been given the opportunity to inspect the Property, Buyer shall rely solely on its own investigation of the Property and not on any information or statement (oral or written) provided or to be provided by Seller.

Buyer further acknowledges and agrees that, as a material inducement to the execution and delivery of this Agreement by Seller, the sale of the Property as provided for herein is made on an "AS IS, WHERE IS" CONDITION AND BASIS "WITH ALL FAULTS" AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED. This includes without limitation any faults and/or conditions that cannot be revealed by an inspection.

7.      Upon closing, Seller will execute and deliver to the Buyer a Trustee's Deed in the form approved by the Title Company.

"Buyer"

*Evergreen Energy Group LLC*
*Howard Bode, manager*

*Howard Bode*

"Seller"

_____
Kenneth S. Eiler, Trustee

2

720129.0001/9241992.1