UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

Case No. _____
      Amended

**NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING**

[Do not use to sell personally identifiable information about individuals]

Debtor

**Notice**

NOTICE IS GIVEN that _____ (movant), the _____ [*enter movant's role in the case (for example, debtor or trustee)*], intends to sell the property described below and moves for authority to sell the property free and clear of liens under 11 U.S.C. § 363(f). Movant's address and phone number are:

The holders of liens of which the movant requests the property be sold free and clear are [*list lienholders*]:

If you wish to object to any aspect of the sale or fees disclosed in paragraph 7 or 15, you must--

1.  Attend the hearing set in paragraph 3 below; and

2.  Within 21 days after the service date in paragraph 17 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401:

**760.5 (3/5/206)**                    Page 1 of 6

    a. a written objection stating the specific facts upon which the objection is based, and

    b. a certificate of service of the objection on the movant.

3. A hearing on the motion and any objections to the sale or fees, which

    is [*check this box only if directed to do so by the court*]

    is not

an evidentiary hearing at which witnesses may testify, is scheduled as follows:

**Date:** _____    **Time:** _____

**Location**:    Courtroom #_____, _____

Telephone Hearing [*See Local Bankruptcy Form (LBF) 888, Telephone Hearing Requirements.*]

**Call In Number:** (855) 244-8681

**Access Code:**    2319 199 8338 for Judge David W. Hercher (dwh)

    2311 562 9438 for Judge Peter C. McKittrick (pcm)

    2303 266 1826 for Judge Teresa H. Pearson (thp)

    2318 130 5070 for Judge Kathryn F. Evans (kfe)

Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

If no timely objection is filed, an order may be lodged and the hearing may be canceled. Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov after the objection deadline has passed.

**Motion**

The movant moves for authority to sell the property free and clear of liens under § 363(f) as follows--

1. The specific subsections of § 363(f) movant relies on for authority to sell the property free and clear of liens are [*specify for each lienholder*]:

2.  Buyer's name and relation or other connection to debtor:

3.  General description of the property [*if real property, state street address here and attach legal description as an exhibit to the notice filed with the court*]:

4.  A copy of the full property description or inventory may be examined or obtained at:

5.  The property may be previewed at [*include time and place*]:

6.  Other parties to the transaction and their relationship to the debtor are:

7.  The gross sale price is: $ _____.

    All liens on the property total $ _____, of which movant believes a total of $ _____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable).

    Secured creditor also seeks reimbursement of $ _____ for fees and costs.
    Total sales costs will be: $ _____.

    All tax consequences have been considered, and it presently appears that the sale will result in net proceeds to the estate after payment of valid liens, fees, costs, and taxes of approximately: $ _____.

8. The sale      is      is not [*check one*] of substantially all of the debtor's assets. Terms and conditions of sale:

9. Competing bids must be submitted to the movant no later than _____ and must exceed the above offer by at least _____ and be on the same or more favorable terms to the estate.

10. Summary of all available information regarding valuation, including any independent appraisals:

11. If paragraph 7 indicates little or no equity for the estate, the reason for the sale is:

    and expenses and taxes resulting from the sale will be paid as follows:

12. (Chapter 11 cases only) The reason for proposing the sale before confirmation of a plan of reorganization is:

**760.5 (3/5/206)**                    Page 4 of 6

13. The following information relates to liens on the property which are listed in priority order:

| Name | Service Address [*See Federal Rule of Bankruptcy Procedure (FRBP) 7004*] | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid.) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Of the liens listed in this paragraph designated to be fully paid, movant does not request that the sale be free and clear but moves for authority to pay them in full.

14. Any liens not fully paid at closing will attach to the sale proceeds in the priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs, or other charges as provided in this motion, must be held in trust until the court orders payment.

15. (If real property) The court appointed real estate broker, _____ _____will be paid _____.

16. If this is a chapter 11 case, this motion complies with the guidelines set forth in LBF 363, *Procedures re: Motions for Sale of All or Substantially All Assets*.

17. I certify that on _____ this document was served--

[_] [*check this box if movant is chapter 7 trustee*] under FRBP 7004 on debtor, U.S. trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys.

[_] [*check this box if movant is not chapter 7 trustee*] under FRBP 7004 on debtor, trustee (if any), U.S. trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys, and that it was also sent on that date, pursuant to FRBP 2002(a), to all creditors and all parties as listed in the court's records that were  obtained on _____, a copy of which is attached to the document filed with the court.

18. For further information, contact:

_____      _____

Date          Signature & Relation to Movant

_____

(If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#

_____

**760.5 (3/5/206)**          Page 6 of 6

## EXHIBIT A

Legal Description

All of Block 47 of GALLAGHER'S PART OF THE CITY OF FLORENCE, as platted and recorded at Page 12 of Volume 30, Lane County Oregon Deed Records, in Lane County, Oregon.

TOGETHER WITH that portion inured by Order of Vacation No. 366 recorded December 21, 1960, Recorder's Reception No. 18801, Lane County Oregon Official Records.

EXCEPTING THEREFROM that portion conveyed to the State of Oregon, by and through its Department of Transportation, Highway Division, by Quitclaim Deed recorded August 12, 1985, Recorder's Reception No. 8528276, Lane County Oregon Official Records and by Deed recorded April 18, 2001, Recorder's Reception No. 2001-022235, Lane County Oregon Official Records.

| Estate of Reinard Adolph Pollmann USBC Case No. 25-60008-thp7 Sale Proceeds Waterfall Statement 1845 Hwy 126, Florence, OR 97439 | |
|---|---|
| **Purchase Price** | **$385,000.00** |
| | |
| Less: Broker's and Property Manager's Commissions | |
| Trustee's Master Broker: West Coast Commercial Realty (2% of purchase price, plus 25% of Local Broker's commission)[1] | $11,068.75 |
| Trustee's Local Broker Joseph Aquirre/Pacific Coast Real Estate & Development (3.5% of purchase price, less 25% of such amount to be paid to Master Broker) | $10,106.25 |
| Buyer's Broker Levi Rider/Pacific Coast Real Estate & Development (2.5% of purchase price) | $9,625.00 |
| **Total Commissions** | **$30,800.00** |
| Less: Real Estate Taxes | $32,573.44 |
| Less: Closing Costs (1% of purchase price) | $3,850.00 |
| **Total sales costs** | **$67,223.44** |
| | |
| **Net Proceeds** | **$317,776.56** |
| | |
| *Senior Liens Paid in Full* | |
| City of Florence | $376.92 |
| Eugene W. Gramzow, Trustees for the "Eugene W. Gramzow Revocable Trust," dated Feb. 3, 1998 (Claim 12-1 in original amount $279,165.62) | $331,356.92 |
| *Discounted payoff to Eugene W. Gramzow Revocable Trust pursuant to agreement with Trutsee* | $300,000.00 |
| Oregon Department of Revenue L07509698432[2] | $8,960.98 |
| **Total** | $640,694.82 |
| **Net Proceeds Before DOR Payment** | **$8,438.66** |
| Oregon Department of Revenue L1844889376[2] | $9,378.20 |
| *Partial Payment to DOR* | $8,438.66 |
| | |
| *Liens Not Paid* | |

Page 1

| | |
|---|---:|
| Oregon Department of Revenue Deficiency L1844889376[2] | $939.54 |
| Oregon Department of Consumer and Business Services Lien 22CV33402[2] | $286,299.95 |
| Internal Revenue Service (Lien No. 4775952223)[3] | $5,447,057.20 |
| Internal Revenue Service (Lien No. 477973423)[3] | $140,077.72 |
| Oregon Department of Revenue 254922[2] | $39,414.43 |
| Department of Consumer and Business Services 2024-008092[2] | $106,472.82 |
| Western Mercantile Agency, Inc. 24SC26915 | $8,420.79 |

| | |
|---|---:|
| Total Liens on Property | $6,410,389.37 |
| Total Liens Paid | $350,350.00 |
| **Total Liens Unpaid** | **$6,060,039.37** |

[1] Master Broker commission and employment subject to Court approval. Hearing scheduled for April 7, 2026 at 11:00 a.m.  See ECF No. 337.

[2] Lien may be paid from sale closing of another property to which lien attaches prior to this sale.

[3] IRS lien amount may be reduced from sale closings of other properties to which lien attaches prior to this sale.

**Estate of Reinard Adolph Pollmann**
**USBC Case No. 25-60008-thp7**

**1845 Hwy 126, Florence, OR 97439**
**SUPPLEMENTAL INFORMATION**

| Name | Service Address | Approximate Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid) | 363(f) provision |
|---|---|---|---|---|
| Eugene W. Gramzow, Trustees for the "Eugene W. Gramzow Revocable Trust," dated Feb. 3, 1998 | Eugene W. Gramzow, Trustees for the "Eugene W. Gramzow Revocable Trust," dated Feb. 3, 1998 c/o Advanced Investment Corp. Timothy A. Solomon, Tabor Law Group 4110 SE Hawthorne Blvd. PMB 506 Portland, OR 97214 | $331,356.92 | Paid $300,000.00 as discounted payoff pursuant to agreement with Trustee | 363(f)(2). Secured creditor agreed to discounted payoff on the condition that if the sale does not close by May 30, 2026, the Trustee will stipulate to stay relief with respect to the property to permit the secured creditor to commence foreclosure proceedings without further proceedings in the bankruptcy court. Any pending foreclosure sale shall not prevent the Trustee from closing a sale after May 30, 2026. |
| Lane County Real Property Tax | Lane County Tax Collector 125 E. 8th Avenue Eugene OR 97401-2968 | $32,573.44 | fully paid | 363(f)(5) |
| City of Florence | Erin Reynolds, City Manager Florence City Hall 250 Highway 101 Florence, OR 97439 | $376.92 | fully paid | 363(f)(5) |
| Oregon Department of Revenue | Oregon Department of Revenue John Butler Bankruptcy Technician Oregon Department of Revenue 955 Center St NE Salem, OR 97301-2555 | $57,753.61 | partially paid | 363(f)(2) |
| Oregon Department of Consumer and Business Services | Sean O'Day, acting director Oregon Department of Consumer and Business Services 350 Winter St NE PO Box 14480 Salem, OR 97309-0405 | $392,772.77 | not paid | 363(f)(2) |
| Department Treasury - Internal Revenue Service | Internal Revenue Service PO Box 7346 Philadelphia, PA 19101-7346 Cristal Jatip Bankruptcy Specialist Internal Revenue Service M/S 0240 1220 SW Third Ave., Suite G-044 Portland, OR 97204-2871 | $5,587,134.92 | not paid | 363(f)(2) |

| Western Mercantile Agency, Inc. | Michelle K. Gallino, President<br>Western Mercantile Agency, Inc.<br>165 S 5th Street, Ste A<br>Coos Bay, OR 97420 | $8,420.79 | not paid | 363(f)(4). Judgment entered within 90 days of petition date and is avoidable by the Trustee as a preference under 11 U.S.C. 547 |
|---|---|---|---|---|
| Supplementary notice to: | Gillian Bunker and Ilana Quesnell<br>Department of Justice<br>1000 SW Third Avenue, Suite 600<br>Portland, OR 97204 | | | |
| Supplementary notice to: | Carla McClurg<br>Oregon Department of Justice<br>1162 Court St. NE<br>Salem, OR 97301 | | | |

 

SALE AGREEMENT # __1845Landau__

COMMERCIAL

# COMMERCIAL REAL ESTATE SALE AGREEMENT

## FINAL AGENCY ACKNOWLEDGMENT

Both Buyer and Seller acknowledge having received the Oregon Real Estate Agency Initial Agency Disclosure Pamphlet and hereby acknowledge and consent to the following agency relationships in this transaction.

**Buyer's Agent(s) Information:**

Buyer's Agent 1*: __Levi Rider__   Oregon License #: __201225928__

is the agent of: (*select one*) ☑ Buyer exclusively ("Buyer Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency").

Name of Real Estate Firm*: __Pacific Coast Real Estate__   Firm License #: __201258321__

Buyer's Agent 1's Office Address: __1260 N Bayshore Dr 105 Coos Bay OR 97420__

Phone #1: __(541) 294-1485__ Phone #2: __(541) 808-3297__ E-mail: __Levi@PCREteam.com__

Buyer's Agent 2*: _____   Oregon License #: _____

is the agent of: (*select one*) ☐ Buyer exclusively ("Buyer Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency").

Name of Real Estate Firm*: _____   Firm License #: _____

Buyer's Agent 2's Office Address: _____

Phone #1: _____ Phone #2: _____ E-mail: _____

**Seller's Agent(s) Information:**

Seller's Agent 1*: __Joseph Aguirre__   Oregon License #: __201012096__

is the agent of: (*select one*) ☑ Seller exclusively ("Seller Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency").

Name of Real Estate Firm*: __Pacific Coast Real Estate & Development__   Firm License #: __201258321__

Seller's Agent 1's Office Address: __1260 N Bayshore Dr 105 Coos Bay OR 97420__

Phone #1: __(541) 217-7710__ Phone #2: __(541) 808-3297__ E-mail: __Joe@pcreteam.com__

Seller's Agent 2*: _____   Oregon License #: _____

is the agent of: (*select one*) ☐ Seller exclusively ("Seller Agency") ☐ Both Buyer and Seller ("Disclosed Limited Agency").

Name of Real Estate Firm*: _____   Firm License #: _____

Seller's Agent 2's Office Address: _____

Phone #1: _____ Phone #2: _____ E-mail: _____

*If Buyer's and/or Seller's Agents and/or Firms are co-selling or co-listing in this transaction, all Agents and Firm names should be disclosed above or in an attached OREF C-529 – Final Agency Acknowledgment Addendum.

If both Parties are each represented by one or more Agents in the same Real Estate Firm, and Agents are supervised by the same authorized principal broker in that Real Estate Firm, Buyer and Seller acknowledge the authorized principal broker will become the disclosed limited agent for both Buyer and Seller as more fully explained in the Disclosed Limited Agency Agreements that have been reviewed and signed by Buyer, Seller, and Agent(s).

Buyer will sign this acknowledgment at the time of signing this Agreement before submission to Seller. Seller will sign this acknowledgment at the time this Agreement is first submitted to Seller, even if this Agreement will be rejected or a counteroffer will be made. Seller's signature to this Final Agency Acknowledgment will not constitute acceptance of this Agreement or any terms in this Agreement.

Buyer *Kenneth G. Landau*   Date/Time __03/09/2026, 09:33:22 PM PDT__ ⬅

Print __Kenneth G. Landau__

Buyer *Sonda Landau*   Date/Time __03/09/2026, 09:26:08 PM PDT__ ⬅

Print __Sonda Landau__

Seller _____   Date/Time _____ ⬅

Print __Kenneth S. Eiler, Trustee of the__

Seller _____   Date/Time _____ ⬅

Print __Estate of Reinard Adolph Pollmann, debtor__

LINES WITH THIS SYMBOL ⬅ REQUIRE A SIGNATURE AND DATE   OREF C-501 | Released 01/2026 | Page 1 of 14

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

Created by Levi Rider with SkySlope® Forms

DigiSign Verified - e47dcb43-29fe-4305-8127-a336a1354699

 

SALE AGREEMENT # __1845Landau__

COMMERCIAL

# COMMERCIAL REAL ESTATE SALE AGREEMENT

## SALE AGREEMENT GENERAL TERMS

This Agreement is intended to be a legal and binding contract. If it is not understood, seek competent legal advice before signing. For an explanation of capitalized terms and the legal concepts applicable to this Agreement, review Section 38 (Definitions) and Section 39 (Miscellaneous).

**1. PARTIES, PROPERTY DESCRIPTION, AND PRICE:** Buyer (*insert name[s]*) __Kenneth G. Landau, Sonda Landau__

offers to purchase from Seller (*insert name[s]*) __Kenneth S. Eiler, Trustee of the, Estate of Reinard Adolph Pollmann, debtor__

the following described real property (the "Property") situated in the State of Oregon, County of __Lane__ , and commonly known or identified as: (*complete one or more*)

(a) Street Address: __1845 OR-126__
__Florence OR 97439__ ; and
(*If the above address does not adequately describe the Property, include the Tax Identification Number and/or other identifying information.*)

(b) Tax Identification Number(s): __0794725__ ; and

(c) Other Identifying Information (lot/block number, etc.): __18-12-26-32-05200__
__.__

If a complete legal description of the Property is not included in this Agreement, Buyer and Seller will use the legal description provided by Escrow, defined in Section 28 (Escrow), for purposes of legal identification and conveyance of title.

Buyer offers to purchase the Property in U.S. currency for (the "Purchase Price") .............................................................A $ __385,000.00__
on the following terms: as earnest money, the sum of (the "Deposit").................................................B $ __5,000.00__
as additional earnest money, the sum of (the "Additional Deposit").....................................................C $_____
at or before Closing, the balance of down payment.............................................................................D $_____
at Closing and upon Delivery of the ☑ Deed ☐ Land Sale Contract, the balance of the Purchase Price ......................... E $ __380,000.00__
will be paid as agreed in the Financing Sections of this Agreement.          (*the sum of Lines B, C, D, and E must equal Line A*)

**2. FIXTURES AND PERSONAL PROPERTY:** All fixtures, trade fixtures, and essential related equipment (for example, remote controls and keys related to the Property – including mailbox and outbuilding[s]) are to be left upon the Property as part of the Property being purchased, except that the following fixtures and/or trade fixtures are excluded from the Property being purchased: (*describe*) __AS-IS__

_____ (for additional fixtures or trade fixtures, see Addendum _____).

All personal property located on the Property is excluded from this transaction, except that the following personal property (the "Personal Property") is included as a part of the Property and will be conveyed to Buyer in AS-IS condition at Closing: (*describe*) __AS-IS__

_____ (for additional personal property see Addendum _____).

The price for the Personal Property is (*select one*) ☑ included within the Purchase Price or ☐ $_____, which must be paid by Buyer at Closing. If requested by a Party, the Parties will, within _____ Days (seven [7] if not filled in) following the Effective Date, attach a separate exhibit, jointly signed, identifying the stated value for each item of Personal Property.

## FINANCING

**3. BALANCE OF PURCHASE PRICE:** In this Agreement: (a) "Funds" means the funds required to pay the Purchase Price of the Property, whether they are the Deposits, down payment, or (if this is an all-cash transaction) the full Purchase Price; and (b) "Liquid" means Funds that are cash or immediately convertible to cash that is available to Buyer (loans, gifts, proceeds of a sale of other property, and 401[k] disbursements are not Liquid). Buyer represents that all of the Funds will be Liquid before Closing.

Buyer Initials *KGL* / *SL*          Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022. This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

 

# COMMERCIAL REAL ESTATE SALE AGREEMENT

**4. SELLER CONTRIBUTIONS:** Seller will pay the following amount(s) at Closing: (*select all that apply*)

(a) ☑ **Buyer's Agent's Compensation.** Compensation to Buyer's Agent's Firm in the amount of (*select and complete one*)

☐ $_____ or ☐ _2.5_ % of the Purchase Price. Except as expressly provided in this Agreement or other written agreements, payment of compensation does not modify any obligation to pay compensation to a real estate agent, or modify or create any agency relationships between any parties. Buyer's Agent's Firm is intended to be a third-party beneficiary of this section.

(b) ☐ **Closing Costs.** (*select and complete one*) ☐ $_____ or ☐ _____% of the Purchase Price for Buyer's appraisal and inspection fees, recording fees, loan origination fees, mortgage interest, interest rate buydown, and discount points, title and escrow costs, HOA fees, and assessments, homeowner and mortgage insurance, down payment assistance programs, Buyer's portion of property taxes, transfer taxes and other closing costs, and prepaid expenses.

(c) ☐ **Other.** (*describe*) _____
_____.

After the Effective Date, the parties will document any changes to this section using OREF C-566 – Seller Contributions Addendum.

Buyer and Seller are advised to review OREF C-564 – Advisory Regarding Real Estate Compensation for information about how real estate compensation works and the choices available when hiring a real estate agent.

**5. SOURCE OF FUNDS:** (*If this transaction is an all-cash transaction, select and complete Section 5.1. If this transaction is financed, select and complete Section 5.2. If this transaction is a seller-carried transaction, select Section 5.3.*)

**5.1.** ☑ **All-Cash.** This is an all-cash transaction. Buyer will provide verification ("Verification") of readily available Funds as follows: (*select one*)

(a) ☑ Buyer has attached the Verification to this Agreement;

(b) ☐ Buyer will provide Seller with the Verification within _____ Days (seven [7] if not filled in) after the Effective Date; or

(c) ☐ Other: (*describe*) _____.

If the Verification is not attached and Buyer fails to submit a Verification during the period described in the previous sentence, all Deposits will be promptly refunded and this transaction will be terminated.

Seller will not unreasonably withhold approval of the Verification. Within _____ Days (four [4] if not filled in) following Buyer's Delivery of the Verification (the "Disapproval Period"), Seller will Notify Buyer if Seller unconditionally disapproves of the Verification. Upon such disapproval, all Deposits will be promptly refunded to Buyer, and this transaction will be terminated. If Seller fails to provide Buyer with Notice of unconditional disapproval of the Verification during the Disapproval Period, Seller will be deemed to have approved the Verification.

**5.2.** ☐ **Financed.** The balance of the Purchase Price will be financed through one of the following Loan Programs: (*select only one*)

(a) ☐ Conventional; or

(b) ☐ Other: (*describe*) _____

(the "Loan Program"). Buyer will seek financing through a commercial lending institution or mortgage broker ("Lender") participating in the Loan Program selected above.

(*If item [a] or [b] of this section is selected, select one of the following.*)

(i) ☐ Buyer has attached a copy of a letter of interest from Buyer's Lender (a "Letter of Interest");

(ii) ☐ Buyer will secure a Letter of Interest and provide a copy to Seller within _____ Days (five [5] if not filled in); or

(iii) ☐ Buyer will not provide a Letter of Interest.

**5.3.** ☐ **Seller-Carried Financing.** Buyer has attached OREF C-556 – Advisory Regarding Seller-Carried Transactions and OREF C-557 – Seller-Carried Transaction Addendum to this Agreement. Sections 6 - 6.3 do not apply.

**5.4. 1031 Exchange.** Will a portion of the Purchase Price be funded by the proceeds of a like-kind exchange under IRC § 1031? (*select one*)........................................................................................................☐ Yes ☑ No ☐ Unknown

**6. FINANCING CONTINGENCIES:** If Buyer is financing any portion of the Purchase Price (the "Loan"), then this transaction is subject to the following contingencies (the "Financing Contingencies"): (*select all that apply*)

Buyer Initials _KGL_ / _SL_

Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

DigiSign Verified - e47dcb43-29fa-4305-8127-a336a1354699

 

SALE AGREEMENT # __1845Landau__

COMMERCIAL

# COMMERCIAL REAL ESTATE SALE AGREEMENT

(a) ☐ Buyer and the Property will qualify for the Loan from Lender;

(b) ☐ Lender's appraisal will not be less than the Purchase Price; and/or

(c) ☐ Other: (*describe*) _____

_____ .

(d) ☐ None. Sections 5.1, 6.1 - 6.3, and 7 do not apply.

Buyer will have _____ Days (thirty [30] if not filled in) from the Effective Date (the "Financing Contingency Period"), to Notify Seller whether the Financing Contingencies are satisfied. Buyer may extend the Financing Contingency Period _____ time (one [1] if not filled in) for a period of _____ Days (fifteen [15] if not filled in) upon Buyer's Delivery to Seller of reasonably satisfactory evidence that the Lender needs additional time through no fault of Buyer. Except as indicated in this Agreement, all Financing Contingencies are solely for Buyer's benefit and may be waived by Buyer in writing at any time.

**6.1. Buyer's Obligations Regarding Financing.**

(a) Buyer will promptly submit to the Lender a completed loan application to finance the purchase of the Property.

(b) Buyer will promptly comply with Lender's requests, including payment of all application, appraisal, and processing fees, to obtain the Loan.

Buyer authorizes Buyer's Lender to provide non-confidential information to Buyer's and Seller's Agents regarding Buyer's loan application status.

**6.2. Lender-required Documents.** If Buyer is obtaining financing in connection with this transaction, Seller will deliver to Buyer, at least ten [10] Days before the end of the Financing Contingency Period (as extended, if applicable), any documents or information regarding the Property (not Seller financials) in Seller's possession or reasonably available to Seller that may be requested by Buyer's lender prior to that 10-day period ("Lender Required Documents"). Seller's delivery of all of the Lender Required Documents is an additional Financing Contingency.

**6.3. Failure of Financing Contingencies.** If Buyer does not Notify Seller during the Financing Contingency Period that the Financing Contingencies are satisfied, this transaction will automatically terminate and all Deposits will be promptly refunded to Buyer. If Buyer receives actual notice from Lender that any Financing Contingencies have failed or otherwise cannot occur, Buyer will promptly Notify Seller, and the Parties will have _____ Days (five [5] if not filled in) following the date of Buyer's Notice to Seller to either:

(a) terminate this transaction by signing an OREF C-539 – Buyer's Notice of Termination and any termination agreement required by Escrow; or

(b) reach a written agreement on price and terms that will permit this transaction to continue.

Seller and Buyer are not required under the preceding provision (b) to reach an agreement. If (a) or (b) fail to occur within the time period identified in this section, this transaction will be automatically terminated, and all Deposits will be promptly refunded to Buyer. Buyer understands that on termination of this transaction, Seller will have the right to place the Property back on the market for sale at any price and terms as Seller determines, at Seller's sole discretion.

**7. ADDITIONAL FINANCING PROVISIONS:** For buyer's agent compensation or closing costs, use Section 4 (Seller Contributions). (*describe*)

_____

_____

_____ (for more financing provisions, see Addendum _____ ).

## DUE DILIGENCE

**8. DUE DILIGENCE PERIOD:** Buyer will have __0__ Days (thirty [30] if not filled in) after the Effective Date (the "Due Diligence Period") to review the Inspections (defined in Section 11, Property Inspections), Business Documents (defined in Section 12, Business Documents), Leases (defined in Section 12.1, Existing Leases), and Other Due Diligence (defined in Section 13, Other Due Diligence), as well as Seller's response to any Objections Buyer made to the Title Report and Documents (defined in Section 10, Title Insurance) (the Inspections, Business Documents, Leases, Tenant Estoppel Certificates, Other Due Diligence, and Title Report and Documents are referred to collectively in this Agreement as the "Due Diligence"). This transaction will automatically terminate if Buyer does not Notify Seller, before the end of the Due Diligence Period, that Buyer is satisfied with the Due Diligence. Upon such termination, Seller will promptly return all Deposits to Buyer.

Buyer Initials _KGL_ / _SL_                                       Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

 

## COMMERCIAL REAL ESTATE SALE AGREEMENT

**9. INSURANCE:**

**9.1. Property and Casualty Insurance.** Buyer is encouraged to determine the availability and cost of property and casualty insurance that will be obtained for the Property. Additionally, Buyer's Lender, if any, may require proof of that insurance as a condition of a new loan.

**9.2. Flood Insurance.** If the Property is located in a high-risk flood zone, flood insurance may be required as a condition of a new loan. Buyer is encouraged to promptly verify the need for, availability of, and cost of flood insurance. An Elevation Certificate ("EC") is a document used by the National Flood Insurance Program to determine the difference in elevation between a structure and the elevation to which floodwater is anticipated to rise during certain floods. Although an EC is no longer required to obtain flood insurance, a favorable EC can help lower the insurance premium. For more information, go to www.fema.gov.

**10. TITLE INSURANCE:** Within three (3) Days after the Effective Date, Seller will order from Escrow a preliminary title report and copies of (or links to) all documents of record (the "Title Report and Documents") for the Property, and Deliver them to Buyer. If the Title Report and Documents are not fully understood, Buyer should contact Escrow for further information or seek competent legal advice. Buyer's and Seller's Agents are not qualified to advise on title issues.

Following Delivery of the Title Report and Documents by Escrow, Buyer will have _____ Days (seven [7] if not filled in) within which to Notify Seller and Escrow, in writing, of any unacceptable matters disclosed in the Title Report and Documents (the "Objections"). Buyer's failure to timely object in writing will be deemed acceptance of the Title Report and Documents. However, Buyer's failure to timely object will not relieve Seller of the duty to convey marketable title to the Property as described in Section 31.3 (Deed). Seller will have until _____ Days (one [1] if not filled in) before the end of the Due Diligence Period to remove or correct any of the Objections or to give written assurances reasonably satisfactory to Buyer of removal or correction before Closing. Within thirty (30) Days after Closing, Escrow will furnish to Buyer an owner's standard form policy of title insurance insuring that Buyer has marketable title to the Property in the amount of the Purchase Price, free and clear of the Objections, if any, and all other title exceptions agreed to be removed as part of this transaction.

**11. PROPERTY INSPECTIONS:** Buyer understands it is advisable to have inspections of the entire Property performed by one or more qualified licensed professionals relating to such matters as structural condition, environmental condition, septic and sewage, soil condition/compaction/stability, survey, zoning, operating systems, and suitability for Buyer's intended purpose. The following list identifies some, but not all, environmental conditions that may affect health: asbestos, carbon monoxide, high-frequency electric and magnetic fields, formaldehyde, lead and other contaminants in drinking water and well water, lead-based paint, mold and mildew, radon, and leaking underground storage tanks. If Buyer has any concerns about these conditions or others, Buyer is encouraged to secure the services of licensed professional inspectors, consultants, and health experts for information and guidance. Although real estate agents may provide names and contact information of inspectors, consultants, and experts. Buyer should thoroughly vet their qualifications, licensing, and insurance before retaining them. Buyer's and Seller's Agents are not qualified to conduct such inspections and will not be responsible to do so. For further information, Buyer is encouraged to review the Oregon Public Health Division website at www.public.health.oregon.gov.

If Buyer selects box (a), (b), or (c) below, Buyer's obligations under this Agreement are contingent upon Buyer's inspections of the Property (the "Inspections"). (*select one*)

(a) ☐ **Licensed Professional Inspections.** At Buyer's expense, Buyer may have the Property inspected by one or more licensed professionals of Buyer's choice. Inspections that include testing or removal of any portion of the Property (for example, radon and mold) may not be performed, except for the following: (*identify invasive inspections*) _____ _____.

Buyer will restore the Property following any inspections or tests performed by Buyer. Buyer (*select one*) ☐ will ☐ will not provide to Seller any report or portion of a report requested by Seller during this transaction or within thirty (30) Days following termination, and in any event Buyer will not provide to Seller any report or portion of a report not requested by Seller. Seller will not be required to modify any terms of this Agreement as a result of the Insepctions.

(b) ☐ **Alternative Inspection Procedures.** OREF C-525 – Professional Inspection Addendum is attached.

(c) ☐ **Other Inspection Addendum.** (*specify*) _____

(d) ☑ **Buyer's Waiver of Inspections Portion of Due Diligence Contingency.** Buyer represents to Seller, Agents, and Firms that Buyer is satisfied with the condition of the Property, its elements and systems, and knowingly and voluntarily elects to waive the right to have any inspections performed as a contingency to the Closing of this transaction. Buyer may conduct inspections for informational purposes only.

Buyer Initials _KGL_ / _SL_      Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

DigiSign Verified - e47dcb43-29fe-4305-8127-a336a1354699

 

## COMMERCIAL REAL ESTATE SALE AGREEMENT

**12. BUSINESS DOCUMENTS:** Seller has Delivered, or within __0__ Days (ten [10] if not filled in) following the Effective Date, Seller will Deliver the following (the "Business Documents"): (*select one*)

(a) ☐ the documents and information described in OREF C-518 – Investment Property Addendum; or

(b) ☑ the documents containing material information about the Property that are in Seller's possession or control or are reasonably available to Seller, including but not limited to documents and records relating to the ownership, operation, and maintenance of the Property.

**12.1. Existing Leases.** The Property (*select one*) ☐ is ☑ is not subject to one or more leases, which Seller represents, and warrants are current and free from default, except as disclosed in writing to Buyer. Seller will Deliver to Buyer complete and legible copies of all leases and amendments of leases of all or any portion of the Property (the "Leases") for review within _____ Days (ten [10] if not filled in) following the Effective Date.

**12.2. Tenant Estoppel Certificates.** Seller will obtain fully executed tenant estoppel certificates (the "Tenant Estoppel Certificates") from (*select one*) ☑ none of the tenants ☐ each of the tenants ☐ other (*specify*) _____ under the Leases using (*select one*) ☐ OREF C-519 – Tenant Estoppel Certificate ☐ such other form agreed to by the Parties.

Seller will Deliver the Tenant Estoppel Certificates to Buyer for review no later than: (*select one*)

(a) ☐ _____ Days (ten [10] if not filled in) after the Effective Date; or

(b) ☐ _____ Days (ten [10] if not filled in) before the Closing Deadline.

**13. OTHER DUE DILIGENCE:** Buyer may perform zoning, building, feasibility, and the following studies of the Property (the "Other Due Diligence"): (*describe*) _____ _____ (for additional other due diligence, see Addendum _____).

## SELLER REPRESENTATIONS AND DISCLOSURES

**14. SELLER REPRESENTATIONS:** Subject to any written disclosures made by Seller as a part of this transaction, Seller makes the following representations to Buyer.

(a) Seller has all required authority to enter into this Agreement and convey the Property in accordance with the terms of this Agreement.

(b) Seller has no notice from any governmental agency of a condemnation, environmental, zoning, or similar proceeding, existing or planned, which could affect the use, development, operation, or value of the Property.

(c) The Property is connected to: (*select all that apply*)
    (i) ☑ a public sewer system,
    (ii) ☐ an on-site sewage system,
    (iii) ☑ a public water system,
    (iv) ☐ a private well, and/or
    (v) ☐ other: (*describe*) _____.

(d) Seller has no knowledge of any hazardous substances in or about the Property, except for reasonable quantities of substances typically used in properties similar to the Property.

(e) Seller knows of no material defects in or about the Property.

(f) Seller has no notice of any liens or assessments to be levied against the Property.

(g) Seller has no notice from any governmental agency of any violation of law relating to the Property.

(h) Seller knows of no material discrepancies between visible lines of possession and use (such as existing fences, hedges, landscaping, structures, driveways, and other such improvements) currently existing on the Property and the legal description of the Property.

(i) The Property is fully insured by Seller.

(j) The Personal Property is not subject to any security interest, lease, consignment, or other third-party interest, unless the interest is disclosed in a UCC filing, and all taxes that have accrued with respect to the Personal Property have been paid.

Buyer Initials _KGL_ / _SL_

Seller Initials _____ / _____

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE**    OREF C-501 | Released 01/2026 | Page 6 of 14

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

 

# COMMERCIAL REAL ESTATE SALE AGREEMENT

Seller will promptly Notify Buyer if, before Closing, Seller receives actual notice of any event or condition that could result in making any of the above representations or previously disclosed material information relating to the Property substantially misleading or incorrect.

These representations are made to the best of Seller's knowledge. Seller may have made no investigations. Seller has reviewed these representations and agrees that they are accurate, except for the following exceptions to items (a) through (j): (describe) _____ _____ (for more exceptions, see Addendum _____).

**Seller's initials** (required) _____ / _____

Buyer acknowledges the above representations are not warranties regarding the condition of the Property and are not a substitute for, nor in lieu of, Buyer thoroughly and completely investigating, using professionals where appropriate, all material matters related to the condition and value of the Property and its suitability for Buyer's intended use. Buyer's and Seller's Agents will not be responsible for conducting any inspection or investigation of any aspect of the Property. Without limiting the previous sentence, Buyer acknowledges that Seller or any Agent do not promise that the stated square footage of any structure or land being purchased is accurate. If square footage is important to Buyer, Buyer should measure all structures and land before signing, or the accuracy of the stated square footage should be made an express contingency in this Agreement.

**15. SELLER'S PROPERTY DISCLOSURE STATEMENT:** With certain exceptions, Oregon law requires sellers to provide buyers with a statutory Seller's Property Disclosure Statement ("SPDS"). In this transaction, Seller: (select one)

(a) ☐ will provide an SPDS because the Property is one of the residential property types described in ORS 105.465(1)(a), and Buyer has indicated that Buyer will use all or part of the Property as a residence for Buyer or Buyer's spouse, parent, or child; or

(b) ☑ will not provide an SPDS because the Property is not one of the residential property types described in ORS 105.465(1)(a), or because Buyer has indicated that Buyer will not use the Property as a residence for Buyer or Buyer's spouse, parent, or child.

If Section 15(a) is selected, Buyer has the right under Oregon law to revoke Buyer's offer (the "Revocation Right") unless Buyer has waived the Revocation Right. Buyer may exercise the Revocation Right only in writing and only within five (5) Business Days after the Effective Date and Seller has Delivered to Buyer or Buyer's Agent a complete SPDS. However, Buyer may exercise the Revocation Right any time before receiving the SPDS, as long as Buyer does so before Closing. This provision supersedes any contrary terms in the SPDS.

## CONDITION AND COMPONENTS OF THE PROPERTY

**16. AS-IS:** Buyer is purchasing the Property in its present condition and with all defects apparent or not apparent ("AS-IS"), except for Seller's written agreements and representations contained in this Agreement.

**17. OPERATING COVENANTS:** Seller will keep all electrical wiring, heating, cooling, plumbing, irrigation equipment and systems, and the balance of the Property, including the landscaping, in substantially its present condition until Closing. Seller will keep the Property fully insured through Closing.

**18. LEAD-BASED PAINT:** This section only applies if the Property includes one or more residential dwellings and was constructed before 1978. If so, then on or promptly after the Effective Date (the "Date of Delivery"), Seller will Deliver to Buyer OREF C-546 – Lead-Based Paint Disclosure Addendum (the "LBP Disclosure Addendum"), together with the EPA Pamphlet entitled "Protect Your Family From Lead in Your Home" and all information, records, and reports available to Seller pertaining to lead-based paint and/or lead-based paint hazards on the Property Unless waived by Buyer in writing in the LBP Disclosure Addendum, Buyer will have __0__ Days (ten [10] if not filled in), commencing on the Day following the Date of Delivery (the "LBP Contingency Period"), within which to conduct a lead-based paint assessment or inspection of the Property. Buyer may terminate this Agreement by providing OREF C-539 – Buyer's Notice of Termination (the "Termination Notice") to Seller:

(a) during the LBP Contingency Period; or

(b) any time before Seller's Delivery to Buyer or Buyer's agent of both
(i) the EPA pamphlet "Protect Your Family from Lead in Your Home," and
(ii) all information, records, or reports available to Seller pertaining to lead-based paint and/or lead-based paint hazards on the Property.

However, Buyer has no right to terminate under this provision if Buyer closes this transaction or if Buyer waives the right to conduct a risk assessment or inspection in the "Buyer's Acknowledgment" section of the LBP Disclosure Addendum. Upon termination, all Deposits will be promptly refunded to Buyer. If and only if requested by Seller, Buyer will Deliver to Seller a copy of Buyer's written reports or evaluations, if any, with the Termination Notice.

Buyer Initials _KGL_ / _SL_     Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

 

## COMMERCIAL REAL ESTATE SALE AGREEMENT

Buyer's failure to Deliver the Termination Notice to Seller during the LBP Contingency Period will constitute acceptance of the condition of the Property as it relates to the presence of lead-based paint or lead-based paint hazards, and the LBP Contingency Period will automatically expire.

**19. APPROVED USES:** THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

**20. OWNER'S ASSOCIATION OR PLANNED COMMUNITY:** Is all or any part of the Property in a Planned Community, or is it in an area subject to an owner's association? (*select one*) ……………………………………………………………………………….. ☐ Yes ☐ No ☑ Unknown
If Yes or Unknown, Buyer has attached OREF 024 – Owner Association Addendum to this Agreement. In this Agreement, "Planned Community" means a commercial subdivision, not a condominium, in which owners are collectively responsible for part of the subdivision.

**21. PRIVATE WELL:** Does the Property include a well that supplies ground water for human consumption? (*select one*) ……………... ☐ Yes ☑ No
If Yes, Buyer has attached OREF C-523 – Private Well Addendum to this Agreement.

**22. SEPTIC/ON-SITE SEWAGE SYSTEM:** Does the Property include a septic or on-site sewage system? (*select one*) ……………….. ☐ Yes ☑ No
If Yes, Buyer has attached OREF C-524 – Septic/Onsite Sewage System Addendum to this Agreement.

**23. WOOD STOVE OR WOOD BURNING FIREPLACE INSERT:** Does the Property contain a solid fuel burning device, such as a wood stove or wood burning fireplace insert? (*select one*) …………………………………………………………………………………… ☐ Yes ☑ No
If Yes, Seller will promptly provide Buyer with OREF C-552 – Wood Stove and Wood Burning Fireplace Insert Addendum.

**24. SOLAR PANEL SYSTEM:** Does the Property contain solar panels? (*select one*) ……………………………………………………….. ☐ Yes ☑ No
If Yes, Seller will promptly provide Buyer with OREF C-550 – Solar Panel System Addendum.

**25. SMOKE AND CARBON MONOXIDE DETECTORS:** Within _____ Days (twenty [20] if not filled in) after the Effective Date, all smoke alarms, smoke detectors, and carbon monoxide detectors required by law will be installed in the Property and will be in working order. Refer to ORS 479.260 for smoke alarms and smoke detectors and ORS 476.725 for carbon monoxide alarms, or see www.oregon.gov/osfm.

**26. ALARM SYSTEM:** (*select one*)…………………………………………………………………….. ☑ None ☐ Owned ☐ Leased ☐ Unknown
If Leased, Buyer (*select one*) ☐ will ☐ will not assume the lease at Closing.

**27. ADDITIONAL PROVISIONS:** (*describe*) __Buyer acknowledges and agrees that the Property is being purchased in its present AS IS, WHERE IS condition, subject to all existing tenants. Buyer waives all inspection and due diligence contingencies.__
_____ (for more provisions, see Addendum _____).

## ESCROW AND CLOSING

**28. ESCROW:** This transaction will be Closed at (*identify*) __Ticor Title Portland NTS / National Commercial Services__ ("Escrow"), a neutral escrow company licensed and located in the State of Oregon. Costs of escrow and any applicable transfer tax will be shared equally between Buyer and Seller. Seller will order a standard owner's title insurance policy at Seller's expense and authorizes Escrow to pay out of the proceeds of sale the cost of furnishing the policy, the cost of recording the Deed and any other documents recorded at Seller's request, Seller's closing costs, and any liens and encumbrances on the Property payable by Seller on or before Closing. Buyer will deposit with Escrow sufficient funds necessary to pay the cost of recording any financing documents and any other documents recorded at Buyer's request, Buyer's closing costs, and Lender's fees, if

Buyer Initials _KGL_ / _SL_       Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

DigiSign Verified - e47dcb43-29fe-4305-8127-a336a1354699

 

SALE AGREEMENT # __1845Landau__

COMMERCIAL

# COMMERCIAL REAL ESTATE SALE AGREEMENT

any. Real estate fees or compensation for professional real estate services provided by Buyer's or Seller's Agents' Firms will be paid at Closing in accordance with the listing agreement, buyer representation agreement, or other written agreement for compensation.

**29. PRORATIONS OF INCOME AND EXPENSES:**

**29.1. Generally.** Rents, current year's taxes, interest on assumed obligations, and other prepaid expenses attributable to the Property will be prorated by (*select one*) ☑ Escrow ☐ other (*specify*) _____, as of: (*select one*) ☑ the Closing Date ☐ the date Buyer is entitled to possession.

**29.2. Utilities.** Seller will pay all utility bills accrued to the date Buyer is entitled to possession. Buyer will pay Seller for any heating fuel/propane on the Property on the possession date at Seller's supplier's rate. Payment will be handled between Buyer and Seller outside of escrow. Seller will not terminate or disconnect electric, gas, heating fuel/propane, or water utilities before the date Buyer is entitled to possession. At or before Closing, Buyer will give the utility providers all information necessary to begin paying for utility service.

**29.3. Delinquent Rent.** "Delinquent Rent" means any base rent, additional rent, or percentage rent that, under the terms of a Lease, was past due as of Closing. Delinquent Rent will not be prorated at Closing. Any Delinquent Rent received by Buyer after Closing will be retained by Buyer.

**30. EARNEST MONEY:**

**30.1. Deposit.** The Deposit will be handled as follows.

   (a) **Timing of Deposit.** The Deposit will be payable and deposited: (*select only one*)
   (i) ☑ within __7__ Days (seven [7] if not filled in) of the Effective Date (the Deposit Deadline"); or
   (ii) ☐ as follows: (*describe*) _____ (the "Deposit Deadline").

   (b) **Place of Deposit.** The Deposit will be deposited: (*select all that apply*)
   (i) ☑ directly with Escrow;
   (ii) ☐ directly into Buyer's Agent's Firm's client trust account and remain there until disbursement at Closing;
   (iii) ☐ directly into Buyer's Agent's Firm's client trust account, subsequently deposited with Escrow before Closing; and/or
   (iv) ☐ as follows: (*describe*) _____.

Buyer's failure to place the Deposit, as described above, by no later than 5:00 p.m. on the last Day of the Deposit Deadline, will be considered a breach of Section 30.5 (Earnest Money Payment to Seller).

If an Additional Deposit is to be paid, it will be handled: (*select one*) ☑ in accordance with the instructions selected above, or ☐ other (*describe*) _____.

Buyer's withdrawal or attempted withdrawal of one or both Deposits, except as authorized by Seller or in accordance with this Agreement, will be considered a breach of this Agreement, will result in a forfeit of the Deposits and, at the option of Seller, termination of this Agreement. Once the Deposits are placed with Escrow, Seller's and Buyer's Agents and Firms will have no further responsibility to Buyer or Seller regarding the Deposits.

**30.2. Non-Refundable Deposits.** Are one or more of the Deposits non-refundable? (*select one*) ……………………………………..☐ Yes ☑ No
(*If Yes, complete Sections 30.2[a] and [b].*)

   (a) **Identification of Non-refundable Deposits.** The (*select one or both*) ☐ Deposit and/or ☐ Additional Deposit will become non-refundable upon: (*select all that apply*)
   (i) ☐ satisfaction of the Financing Contingencies;
   (ii) ☐ satisfaction with the Due Diligence; and/or
   (iii) ☐ other (*describe*): _____.

   (b) **Handling of Non-refundable Deposits.** When the non-refundable Deposit(s) become non-refundable, they will be handled as follows, and if they are held by Escrow, the Parties will sign any instructions required by Escrow: (*select one*)
   (i) ☐ disburse directly to Seller as follows: (*specify*) _____;
   (ii) ☐ remain in escrow and disburse to Seller upon Closing or earlier termination of this transaction; or
   (iii) ☐ remain in Buyer's Agent's Firm's client trust account and disburse to Seller upon Closing or earlier termination of this transaction.

However, if Seller defaults and this transaction does not close because of Seller's default, the Deposits will be refunded to Buyer.

Buyer Initials _KGL_ / _SL_

Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

 

SALE AGREEMENT # __1845Landau__

COMMERCIAL

# COMMERCIAL REAL ESTATE SALE AGREEMENT

**30.3. Instructions to Escrow.** Upon receipt of a copy of this Agreement signed by Buyer and Seller, Escrow is to establish an escrow account and proceed with Closing as described in this Agreement. If Escrow determines the transaction cannot be Closed for any reason (whether or not there is a dispute between Buyer and Seller) Escrow is to hold all Deposits in Escrow's possession until Escrow receives written instructions from Buyer and Seller, or a final ruling from a court or arbitrator, as to the disposition of the Deposits.

**30.4. Earnest Money Refund to Buyer.** All Deposits will be promptly refunded to Buyer if (a) Seller signs and accepts this Agreement but fails to furnish marketable title; or (b) Seller fails to complete this transaction in compliance with the material terms of this Agreement; or (c) any condition which Buyer has made an express contingency in this Agreement (and has not been otherwise waived) fails through no fault of Buyer. However, Buyer's acceptance of the refund will not constitute a waiver of other legal remedies available to Buyer.

**30.5. Earnest Money Payment to Seller.** Seller may, at Seller's option, terminate this Agreement, and all Deposits paid or agreed to be paid will be paid to Seller as liquidated damages, if Seller signs and accepts this Agreement and title is marketable, and: (a) Buyer has materially misrepresented Buyer's financial status; or (b) Buyer's financial institution does not pay, when presented, any check given as a Deposit or fails to timely make a wire transfer of a Deposit; or (c) Buyer fails to complete this transaction in compliance with the material terms of this Agreement. The Parties expressly agree Seller's economic and non-economic damages arising from Buyer's failure to close this transaction in accordance with the terms of this Agreement would be difficult or impossible to ascertain with any certainty, that the Deposits are a fair, reasonable and appropriate estimate of those damages, and represent a binding liquidated sum, not a penalty.

Seller's sole remedy for Buyer's failure to close this transaction in accordance with the material terms of this Agreement is limited to the Deposits. Seller's right to recover from Buyer any unpaid Deposit will be resolved as described in Section 37 (Dispute Resolution).

**31. CLOSING:**

**31.1. Closing Deadline.** Closing will occur: (*select one*)

(a) ☐ _____ Days (fifteen [15] if not filled in) after the end of the Due Diligence Period;

(b) ☐ _____ Days (fifteen [15] if not filled in) after the end of the Financing Contingency Period; or

(c) ☑ on a date mutually agreed upon between Buyer and Seller on or before (*insert date*) __05/15/2026__

(the "Closing Deadline"). Buyer and Seller acknowledge for Closing to occur by the Closing Deadline, it may be necessary to execute documents and deposit Funds in escrow before that date.

Buyer (*select one*) ☐ may ☑ may not extend the Closing Deadline _____ time (one [1] if not filled in) for a period of _____ Days (fifteen [15] if not filled in) upon Buyer's Delivery of the following documents to Seller: (*describe*) _____ _____.

**31.2. Closing Disclosure Delay.** If the TILA-RESPA Integrated Disclosure ("TRID") rule applies to this transaction, Buyer and Seller will each receive a "Closing Disclosure" from Buyer's Lender. TRID typically requires the Closing Disclosure to be received by the buyer at least three (3) Business Days before the date the buyer signs loan documents. A change to the Closing Disclosure late in the transaction could result in a delay in Closing to comply with the three-business day rule. A delay beyond the Closing Deadline could result in the termination of this transaction unless Seller and Buyer agree to extend it.

**31.3. Deed.** Seller will convey marketable title to the Property by (*select one*) ☑ statutory warranty deed or ☐ other (*specify*) _____ (if neither box is selected, a statutory warranty deed will be used), free and clear of all liens of record, except property taxes that are a lien but not yet payable, zoning ordinances, building and land use restrictions, reservations in federal patents, easements of record, covenants, conditions, and restrictions of record, and those matters accepted by Buyer under Section 10 (Title Insurance). Buyer should secure legal advice regarding different forms of ownership and rights of survivorship. Agents are not qualified to provide advice on these issues. Once the desired form of ownership is determined, Buyer will promptly notify Escrow.

**31.4. Bill of Sale.** If applicable, Seller will convey title to the Personal Property at Closing by OREF C-512 – Bill of Sale, free and clear of all liens and encumbrances.

**31.5. Assignment of Leases and Security Deposits.** At Closing, Seller will: (a) assign the Leases to Buyer using OREF C-520 – Assignment and Assumption of Leases or such other form mutually agreed to by the Parties; and (b) pay over to Buyer all security deposits held under the Leases.

Buyer Initials *KGL* / *SL*

Seller Initials _____ / _____

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE

OREF C-501 | Released 01/2026 | Page 10 of 14

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.



# COMMERCIAL REAL ESTATE SALE AGREEMENT

**32. POSSESSION:** Is one or more tenants currently in possession of the Property? (*select one*)………………………………………… ☑ Yes ☐ No

If Yes, (*select one*)

(a) ☐ Seller will remove all tenants before Closing, pay any tenant relocation costs required by law, and deliver possession to Buyer by 5:00 p.m. on the date of Closing;

(b) ☑ Buyer will accept all tenants at Closing, all rents will be prorated as of Closing, and all deposits held on behalf of tenants by Seller will be transferred to Buyer through Escrow at Closing. Buyer and Seller are encouraged to attach OREF C-518 – Investment Property Addendum to address additional items related to Buyer accepting tenants at Closing; or

(c) ☐ other (*describe*) _____.

If No, possession of the Property will be delivered by Seller to Buyer: (*select one*)

(a) ☑ by 5:00 p.m. on the date of Closing;

(b) ☐ by (*insert time*) _____ ☐ a.m. ☐ p.m. _____ Days after Closing; or

(c) ☐ by (*insert time*) _____ ☐ a.m. ☐ p.m. on (*insert date*) _____.

Seller will remove all personal property (including trash) except for the Personal Property (as defined in Section 2, Fixtures and Personal Property), from the Property before Closing.

## TAXES

**33. INCOME TAX WITHHOLDING:**

**33.1. Oregon Withholding.** Subject to certain exceptions, Escrow is required to withhold a portion of Seller's proceeds if Seller is a non-resident individual or corporation as defined under Oregon law. Buyer and Seller will cooperate with Escrow by executing and delivering any instrument, affidavit, or statement as requested and to perform any acts reasonable or necessary to carry out the provisions of Oregon law.

**33.2. Federal Withholding (FIRPTA).** If Seller is a "foreign person" under the Foreign Investment in Real Property Tax Act ("FIRPTA"), then even if there is an exemption to FIRPTA applicability, Buyer and Seller will ask Escrow to assist the Parties with FIRPTA compliance (see OREF C-544 – Advisory Regarding Foreign Investment in Real Property Tax Act). Seller's failure to comply with FIRPTA is a material default under this Agreement.

If Seller is not a "foreign person," then Seller will Deliver to Escrow a certificate that complies with 26 CFR §1.1445-2 (the "Certificate") before Closing. If Seller fails to do so, Seller will be presumed to be a "foreign person," and the terms of the previous paragraph will apply. Escrow is instructed to act as a Qualified Substitute and provide Buyer with a statement that complies with 26 U.S.C. § 1445(b)(9) at Closing.

If Escrow does not agree to assist with FIRPTA compliance (including providing the Certificate or acting as a Qualified Substitute) then either Buyer or Seller may move escrow to another Oregon-licensed escrow agent who is willing to assist with FIRPTA compliance, in which case the Parties will equally share any cancellation fees. If, due to moving escrow, this transaction cannot be closed by the Closing Deadline, the Closing Deadline will be extended by seven (7) Days to accommodate the move.

Seller's and Buyer's Agents are not experts in FIRPTA and will not act as a transferor or transferee agent or Qualified Substitute for purposes of the Withholding Requirement. If FIRPTA may apply in this transaction, Seller and Buyer should promptly consult their own experts familiar with FIRPTA-related laws and regulations. For further information, see www.irs.gov.

**34. 1031 EXCHANGE:** If Buyer or Seller elects to complete an exchange under Section 1031 of the Internal Revenue Code in this transaction, the other Party will cooperate with them and the accommodator, if any, as necessary to complete the exchange, so long as it will not delay the close of escrow or cause additional expense or liability to the cooperating Party. Unless otherwise indicated in this Agreement, this provision will not be a contingency to the closing of this transaction.

**35. DEFFERAL OF PROPERTY TAXES:** The Property (*select one*) ☐ is ☑ is not specially assessed for property taxes (for example, farm, forest, or other) in a manner that may result in the levy of additional taxes in the future. If it is specially assessed, Seller represents that the Property is current as to income or other conditions required to preserve its deferred tax status. If, as a result of Buyer's actions or the Closing of this transaction,

Buyer Initials _KGL_ / _SL_

Seller Initials _____ / _____

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

 

SALE AGREEMENT #  **1845Landau**

COMMERCIAL

# COMMERCIAL REAL ESTATE SALE AGREEMENT

the Property either is disqualified from special use assessment or loses its deferred tax status, then unless otherwise specifically indicated in this Agreement, Buyer will be responsible for and will pay when due, any deferred and/or additional taxes and interest that may be levied against the Property, and will hold Seller harmless from those expenses.

However, if as a result of Seller's actions before Closing, the Property either is disqualified from its entitlement to special use assessment or loses its deferred tax status, and if Seller did not disclose the upcoming disqualification or loss of status to Buyer in writing before Closing, Buyer may, at Buyer's sole option, either: (a) terminate this transaction and receive a prompt refund of all Deposits paid by Buyer in anticipation of Closing; or (b) close this transaction, in which event Seller will pay into escrow all deferred and/or additional taxes and interest levied or recaptured against the Property and hold Buyer harmless from those expenses. Nothing in this paragraph will be construed to limit Buyer's or Seller's available remedies or damages arising from a breach of this section.

**36. HISTORIC PROPERTY DESIGNATION:** If the Property is or may be subject to a historic property local ordinance or is subject to or may qualify for the Historic Property Special Property Tax Assessment under ORS 358.475 to 358.565, Seller will promptly provide Buyer with OREF C-521 – Historic Property Addendum.

## DISPUTE RESOLUTION

**37. DISPUTE RESOLUTION:** Any dispute between Buyer and Seller relating to the interpretation or enforcement of this Agreement (*select one*) ☐ will ☑ will not be subject to the provisions of Sections 37.1 - 37.5. If neither box is selected, Sections 37.1 - 37.5 will not apply.

**37.1. Filing of Claims.** All claims, controversies and disputes between Seller, Buyer, Agents, and/or Firms, relating to the enforcement or interpretation of this Agreement (including those for rescission) as well as those relating to the validity or scope of this Agreement, and all matters concerning the jurisdiction of the arbitrator(s) and/or Arbitration Service of Portland ("ASP"), to hear and decide questions of arbitrability (collectively, "Claims"), will be exclusively resolved in accordance with the procedures in this Section 37.1, which will survive Closing or earlier termination of this transaction. All Claims will be governed exclusively by Oregon law, and venue will be placed in the county where the Property is situated. Filing a Claim for arbitration will be treated the same as filing in court for purposes of meeting any applicable statute of limitations or statute of ultimate repose and for purposes of filing a *lis pendens*. By consenting to the provisions in this Section 37.1, Buyer and Seller acknowledge they are giving up the constitutional right to have Claims tried by a judge or jury in state or federal court, including all issues relating to the arbitrability of Claims.

**37.2. Exclusions.** The following will not constitute Claims:

(a) any proceeding to enforce or interpret a mortgage, trust deed, land sale contract, or recorded construction lien;

(b) a forcible entry and detainer action, also known as an eviction;

(c) if the matter is exclusively between REALTORS® and is otherwise required to be resolved under the Code of Ethics & Professional Standards and Policies of the National Association of REALTORS®;

(d) if the matter relates to a real estate compensation or fee dispute with an Agent or Firm, and the written listing, service or fee agreement with Buyer or Seller contains a mandatory mediation and/or arbitration provision; and

(e) filing in court for the issuance of provisional process described under the Oregon Rules of Civil Procedure; however, such filing will not constitute a waiver of the duty to utilize the dispute resolution procedures described in this Agreement.

**37.3. Small Claims Between Buyer and Seller.** If the Circuit Court in the county in which the Property is located has a small claims department, all Claims between Buyer and Seller within the jurisdiction that ssmall claims department will be brought and decided there, in lieu of mediation, arbitration, or litigation in any other forum. If that Circuit Court does not have a small claims department, those Claims will be brought and decided in the small claims department of the applicable Justice Court. Buyer and Seller waive any rights they may have under ORS 46.455(3) or ORS 55.065(2)(c) to remove the matter from a small claims court by requesting a jury trial. A judgment in a small claims department is final and binding for all purposes, and despite the provisions of ORS 51, there is no right to appeal a small claims department judgement.

**37.4. Mediation and Arbitration Between Buyer and Seller.** All Claims will first be submitted to mediation through the program administered by ASP. All Claims that have not been resolved by mediation as described in this Agreement will be submitted to final and binding arbitration in accordance with the then-existing rules of ASP. The prevailing Party in any arbitration between Buyer and Seller will be entitled to recovery of all reasonable attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees; but only if it is first established to the satisfaction of

Buyer Initials *KGL* / *SL*

Seller Initials _____ / _____

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE**

OREF C-501 | Released 01/2026 | Page 12 of 14

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

 

# COMMERCIAL REAL ESTATE SALE AGREEMENT

the arbitrator(s) (or judge, if applicable) that the prevailing Party offered or agreed in writing to participate in mediation before, or promptly upon, the filing for arbitration.

**37.5. Mediation and Arbitration Involving Agent/Firms.** All Claims that include Agents or their Firms, including those within the jurisdiction of a small claims department, will be resolved in accordance with the mediation and arbitration process described in Section 37.4 (Mediation and Arbitration Between Buyer and Seller). If applicable, the prevailing party will be entitled to an award of attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees, as described in that section.

## DEFINITIONS/MISCELLANEOUS

**38. DEFINITIONS:** In addition to the other definitions in this Agreement, when the first letter of these terms is capitalized, they mean the following.

(a) **Agent** means Buyer's or Seller's real estate agent licensed to perform professional real estate activity in the State of Oregon.

(b) **Agreement** and **Sale Agreement** mean this Commercial Real Estate Sale Agreement and any written offer, counteroffer, or addendum in any form or language that adds to, amends, or otherwise modifies this Agreement that has been Signed and Delivered.

(c) **Business Day** means Monday through Friday, except days that are recognized as official holidays by Oregon under ORS 187.010 or by the United States under 5 U.S.C. § 6103.

(d) **Closing, Closed,** and **Closing Date** mean when the Deed or Land Sale Contract is recorded, and funds are available to Seller.

(e) **Day** means a calendar day.

(f) **Deed** means the deed selected in Section 31.3 (Deed).

(g) **Deliver, Delivery,** or **Delivered** means transmission of a document, either by placing it in a U.S. mailbox, taking it to the recipient's address, or placing it in the custody of a delivery service (collectively, "Manual Delivery"); or by pushing send or start on a device that sends facsimiles or in an electronic mail program ("Electronic Delivery").

(h) **Deposits** means the Deposit and any Additional Deposit described in Section 1 (Parties, Property Description, and Price) of this Agreement.

(i) **Effective Date** means the date when this Agreement has been Signed and Delivered.

(j) **Firm** means the real estate company with which an Agent is affiliated.

(k) **Land Sale Contract** means, if Section 5.3 (Seller-Carried Financing) is selected, a land sale contract, contract of sale, or other installment contract under which legal title is transferred to the buyer when the final payment of the Purchase Price is made to the seller.

(l) **Notice** means a written statement Delivered to the other Party.

(m) **Notify** means Delivery of a Notice to the other Party or their Agent.

(n) **Parties** means Buyer and Seller, and "**Party**" means Buyer or Seller.

(o) **Signed and Delivered** means Seller and Buyer have: (i) signed a document, and (ii) Delivered it to the other Party or their Agent. When a document is Signed and Delivered, it becomes legally binding on Buyer and Seller, and neither has the ability to withdraw it.

**39. MISCELLANEOUS:** The following provisions govern the manner in which the terms of this Agreement will be construed.

(a) **Binding Effect.** This Agreement is binding upon the heirs, successors, and assigns of Buyer and Seller. However, Buyer's rights and responsibilities under this Agreement or in the Property are not assignable without the prior written consent of Seller.

(b) **Counterparts.** This Agreement may be signed in multiple legible counterparts with the same legal effect as if all Parties signed the same document.

(c) **Electronic Transmission.** The sending of a signed version of this Agreement or any part of this Agreement via Electronic Delivery from one Party (or their Agent) to the other Party (or their Agent) will have the same effect as Manual Delivery of the signed original. If the Parties intend to use any other method for transmitting a signed version of the Agreement (such as regular mail, certified mail, or overnight Delivery), they should so specify in Section 27 (Additional Provisions).

Buyer Initials _KGL_ / _SL_

Seller Initials _____ / _____

**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE**

**OREF C-501 | Released 01/2026 | Page 13 of 14**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022 This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

DigiSign Verified - e47dcb43-29fe-4305-8127-a336a1354699

 

SALE AGREEMENT # __1845Landau__

COMMERCIAL

# COMMERCIAL REAL ESTATE SALE AGREEMENT

(d) **Nonparties.** Agent(s) and Firm(s) identified in the "Final Agency Acknowledgment" section are not parties to this Agreement but are subject to Section 37.5 (Mediation and Arbitration Involving Agents/Firms).

(e) **Notices.** All written Notices or documents required or permitted under this Agreement to be Delivered to Buyer or Seller may be Delivered to their respective Agent with the same effect as if Delivered to that Buyer or Seller. When escrow for this transaction is opened, Buyer, Seller, and their respective Agents, where applicable, will provide Escrow with their preferred means of notification (for example, email, text number, facsimile number, mailing or personal delivery address), which will serve as the primary location for receipt of all notices or documents.

(f) **Time.**
   (i)  Time is of the essence of this Agreement.
   (ii)  Any reference in this Agreement to a specific time refers to the time in the time zone where the Property is located.
   (iii)  Time calculated in Days after the Effective Date will start on the first full Day after the date this Agreement is Signed and Delivered.
   (iv)  All deadlines for performance measured in Days will terminate as of 5:00 p.m. on the last Day of that deadline, however designated. If that last day is not a Business Day, that deadline will terminate on the next Business Day.

## SIGNATURE INSTRUCTIONS

**40. OFFER TO PURCHASE:** Buyer offers to purchase the Property on the terms and conditions in this Agreement. Buyer acknowledges receipt of a completely filled-in copy of this Agreement, which Buyer has fully read and understands. Buyer acknowledges that Buyer has not relied on any oral or written statement made by Seller, Seller's Agent, or Buyer's Agent that is not expressly contained in this Agreement. If a Buyer is an entity, the person signing this Agreement warrants their authority to sign on behalf of that entity.

This offer will automatically expire on (*insert date and time*) __03/17/2026__ at __5:00__ ☐ a.m. ☑ p.m. (the "Offer Deadline") if not accepted by that time. Buyer may withdraw this offer before the Offer Deadline any time before Seller's transmission of signed acceptance. This offer may be accepted by Seller only in writing.

Buyer *Kenneth G. Landau*     Date/Time __03/09/2026, 09:33:22 PM PDT__ ←
Print __Kenneth G. Landau__

Buyer *Sonda Landau*     Date/Time __03/09/2026, 09:26:08 PM PDT__ ←
Print __Sonda Landau__

This offer was presented to Seller by (*insert name[s] of Seller's Agent[s]*) _____
_____ on (*insert date and time*) _____ at _____ ☐ a.m. ☐ p.m.

**41. SELLER'S RESPONSE:** (*select one – if no selection is made, this Agreement is void and of no effect*)

  **41.1.** ☐ **Agreement to Sell and Acknowledgments.** Seller accepts Buyer's offer. Seller acknowledges receipt of a completely filled-in copy of this Agreement, which Seller has fully read and understands. Seller acknowledges that Seller has not relied upon any oral or written statement of Buyer, Buyer's Agent, or Seller's Agent that is not expressly contained in this Agreement. Seller has reviewed the Seller Representations made in Section 14 (Seller Representations) and elsewhere in this Agreement and will correct, in writing, any inaccurate representations.

If Seller signs and delivers this Agreement to Buyer after the Offer Deadline, this Agreement will not be binding on Seller and Buyer unless they also sign and Deliver an addendum, counteroffer, or other writing in which they expressly agree to extend the Offer Deadline. The Parties' failure to do so will be treated as a rejection under Section 41.3 (Rejection), and this Agreement is void and of no effect.

  **41.2.** ☐ **Counteroffer.** Seller does not accept the above offer but makes the attached counteroffer.

  **41.3.** ☐ **Rejection.** Seller rejects Buyer's offer.

Seller _____ Date/Time _____ ←
Print __Kenneth S. Eiler, Trustee of the__

Seller _____ Date/Time _____ ←
Print __Estate of Reinard Adolph Pollmann, debtor__

**CHANGES, DELETIONS, AND ADDITIONS TO THE TEXT OF THIS FORM MUST BE INITIALED BY ALL PARTIES TO BE VALID.**

No portion of this form may be reproduced without the express permission of Oregon Real Estate Forms, LLC | Copyright Oregon Real Estate Forms, LLC 2022
This form has been licensed for use solely by the user named below under the terms of the Oregon Real Estate Forms license agreement located at https://orefonline.com/oref-forms-license-terms-and-conditions.

**Trustee's Addendum to Commercial Real Estate Sale Agreement**

1.    Seller is Kenneth S. Eiler, Trustee of the Estate of Reinard Adolph Pollmann, debtor.

2.    In the event of a conflict between the Commercial Sale Agreement ("Sale Agreement") and any prior addenda or exhibit, and this Addendum, the terms of this Addendum shall control.  The Commercial Sale Agreement and all addenda including this Addendum shall be referred to as the "Agreement".

3.    Any dispute between the parties shall be within the exclusive jurisdiction of and decided by the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court"), *In re Reinard Adolph Pollmann,* Case No. 25-60008-thp7 (the "Bankruptcy Action").  This provision specifically overrides and supersedes any contrary provisions involving venue, mediation or arbitration contained in the Sale Agreement.

4.    The sale and Seller's obligation to close shall be subject to entry of an order by the Bankruptcy Court approving the sale and this Agreement pursuant to 11 U.S.C. 363 (the "Sale Order") and shall be subject to overbid by third parties following a motion for approval of sale filed by Seller in the Bankruptcy Action.  To the extent an overbid by a competing bidder is received, Seller shall conduct an auction in which Buyer may participate.  This provision overrides and supersedes any contrary deadline for closing set forth the in the Sale Agreement.   Seller shall be obligated to close no later than 14 days after entry of the Sale Order.

5.    Closing/escrow shall be done through Ticor Title (the "Title Company").

6.    Seller has not made, does not make and specifically disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to (a) the nature, quality or condition of the Property, including, without limitation, zoning and the state of construction, construction to be completed, punch list items to be completed, repair or lack of repair or deferred maintenance, (b) the suitability of the Property for any and all activities and uses which Buyer may conduct thereon, (c) the compliance of or by the Property or its operation with any laws, rules, ordinances or regulations of any applicable governmental authority or body, including, without limitation, the Americans with Disabilities Act and any rules and regulations promulgated thereunder or in connection therewith, (d) the habitability or fitness for a particular purpose of the Property, and (e) the status of any agreement affecting the Property, and (f) any other matter with respect to the Property, and specifically that, Seller has not made, does not make and specifically disclaims any representations or warranties regarding solid waste, as defined by the U.S. Environmental Protection Agency regulations at 40 C.F.R., Part 261, or the disposal or existence, in or on the Property, of any hazardous substance, as defined by the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, and other applicable state laws, and regulations promulgated thereunder.   Buyer further acknowledges and agrees having been given the opportunity to inspect the Property, Buyer shall rely solely on its own investigation of the Property and not on any information or statement (oral or written) provided or to be provided by Seller.

2

Buyer further acknowledges and agrees that, as a material inducement to the execution and delivery of this Agreement by Seller, the sale of the Property as provided for herein is made on an "AS IS, WHERE IS" CONDITION AND BASIS "WITH ALL FAULTS" AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED. This includes without limitation any faults and/or conditions that cannot be revealed by an inspection.

7.      Upon closing, Seller will execute and deliver to the Buyer a Trustee's Deed in the form approved by the Title Company.

"Buyer"

*Kenneth G. Landau*
**Kenneth G. Landau**

*Sonda Landau*
**Sonda Landau**

"Seller"

_____
Kenneth S. Eiler, Trustee

2

720129.0001/9241992.1